PEG D. SHAW *vs.* COMMONWEALTH.

Hampden.    May 6, 1968. — June 28, 1968.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & SPIEGEL, JJ.

*Contempt.   Newspaper.   Search and Seizure.   Law or Fact.   Practice, Criminal,* Mistrial.

Whether there had been an illegal search was a question of law for the court in a criminal case.   [586]

The record of a proceeding on writ of error did not show that defendants in a criminal case relating to narcotic violations were harmed by publication in a newspaper article during the trial of a statement that "Before the trial started, . . . [the judge] denied a defense request to suppress evidence — in this case the bag of packets — on the grounds that the evidence was secured by unreasonable search and seizure", or that a declaration of a mistrial ordered by the judge by reason of the publication was required [586], or that the newspaper reporter who wrote the article was guilty of a clear and undoubted disobedience of a command to her by the judge, given soon after the start of a voir dire hearing on the defendants' request to suppress and again during the hearing, not to mention anything in a newspaper article with respect to the defendants' request, and a judgment of criminal contempt against the reporter for violation of the judge's command was reversed [587].

PETITION for writ of error filed in the Supreme Judicial Court for the county of Hampden on December 10, 1966.

The case was reserved and reported by *Cutter*, J., without decision.

*David Burres* for the petitioner.

*Willie J. Davis*, Assistant Attorney General (*Manuel Morse*, Assistant District Attorney, *John M. Finn*, Deputy Assistant Attorney General, & *Evan T. Lawson*, Legal Assistant to the Attorney General, with him), for the Commonwealth.

WILKINS, C.J.   This petition for a writ of error to reverse a judgment for contempt is reserved and reported without decision by a single justice upon the petition, assignments of error, the return of the Superior Court, the respondent's answer, and a stipulation.

The citation for contempt gave notice that a hearing was to be held on November 4, 1966, in the Superior Court in Springfield "in order to determine whether the order of this court; to wit, that no mention was to be made in the newspapers concerning a voir dire hearing on a motion to suppress evidence in the trial of Commonwealth vs. William Wooten and George Staley heard October 27, 1966, was violated by . . . respondent [the petitioner here]."   At the conclusion of the hearing the petitioner, a newspaper reporter, was found guilty of contempt and fined $100.

The contempt hearing on November 4, 1966, consisted entirely of statements by the judge and by the counsel for the petitioner.   The original order was not in writing, and for its substance we must look to the citation hereinbefore quoted and to the judge's statements at the contempt hearing, which we now summarize: On October 27 in the case of Commonwealth v. Wooten and Staley, which related to narcotic violations, a voir dire was held on a motion to suppress.   Within ten minutes of the start of that hearing, the judge called the petitioner to the bench and told her not to mention in her newspaper account anything concerning the motion.   Upon inquiry by her or some attorney she was further told that the ban included trial time, and that

after the trial she was at liberty, or anybody was at liberty to publish anything he wanted concerning the motion to suppress. Within another half hour the judge again called her to the bench and repeated that she was not to mention anything with respect to the motion to suppress until the trial was over. The petitioner mentioned that she had talked about similar matters with another judge in the Superior Court in an earlier case.

On the following day, October 28, the judge denied the motion to suppress and stated his reasons. The trial on the merits then began, and the same evidence previously heard on voir dire was repeated almost word for word. The petitioner's article was published on Saturday, October 29, in the Springfield Union. It recited in part the evidence which was heard both at the voir dire and at the trial and concluded, "Before the trial started, Judge Beaudreau denied a defense request to suppress evidence — in this case the bag of packets — on the grounds that the evidence was secured by unreasonable search and seizure. The denial followed a three-hour hearing on the motion Thursday, in the absence of the jury." As a result of this article, on the motion of the defendant Staley, the judge declared a mistrial at 10:00 A.M. on October 31, 1966, and explained to the jury his reasons.

The counsel for the petitioner stated that the prohibition by the other judge in the earlier case extended only to the substance of the voir dire, and that the petitioner thought that the prohibition by the trial judge was the same.

The judge again read the portion of the newspaper article above quoted and stated: "Now, if a jury reads that, they are not versed in the technicalities of the law of illegal search and seizure, which is a field that was looked upon by our Supreme Court [of the United States] to be somewhat nebulous, and you can't expect the jury to understand those technicalities, when they read that the judge heard this evidence and he denied the motion to suppress, a jury would reasonably conclude that since the judge heard all this evidence, it must be good evidence and it must be believable

evidence or he wouldn't have denied the motion. And as I read this thing, as I interpret it, you can understand how a jury would say that, well, the judge heard all that evidence and it must be good evidence. He believed it, so why shouldn't we believe it, and that is why I find the defendant has been harmed here and that is the part that I declared a mistrial on. . . . [T]hose are the reasons I believe that I gave to the jury on it."

From what the judge said, it does not logically follow that he should have declared a mistrial. The question whether there was an illegal search was for the judge and not for the jury. *Commonwealth* v. *LaBossiere*, 347 Mass. 384, 387. *Commonwealth* v. *Roy*, 349 Mass. 224, 229. *Commonwealth* v. *Rogers*, 351 Mass. 522, 529–530. *Steele* v. *United States No. 2*, 267 U. S. 505, 510–511. *Ker* v. *California*, 374 U. S. 23, 33.

The effect of the judge's decision was that the bag of packets was to be admitted in evidence at the trial on the merits. It would not have been open to the jury to reach a contrary conclusion on that limited question of adjective law. The record contains no details of the hearing on voir dire or of the incomplete narcotics trial, that is, what there was of it before a mistrial was declared. There is nothing in the record to show the existence of a factual issue for the jury as to which evidence of the legality of the seizure of the bag of packets, as distinguished from the bag of packets itself as evidence, could properly affect their verdict.

We cannot agree that the defendants in the criminal case were harmed. Under proper instructions the jury could have been informed that it was no part of their function to pass upon the excellence or credibility of the evidence as it bore on the validity of the search and seizure and that the judge's conclusion on that issue should not be taken as in any respect an impairment of their duty to return, upon all the evidence, including the bag of packets, a just and true verdict as to the guilt or innocence of the defendants.

To constitute a contempt for violation of the judge's order there must be a clear and unequivocal command and

an equally clear and undoubted disobedience. *Nickerson* v. *Dowd,* 342 Mass. 462, 464. *United States Time Corp.* v. *G. E. M. of Boston, Inc.* 345 Mass. 279, 282. *Massachusetts Commn. Against Discrimination* v. *Wattendorf,* 353 Mass. 315, 317. See *Terminal R.R. Assn. of St. Louis* v. *United States,* 266 U. S. 17, 29, cited in the *Nickerson* case.[1] We shall assume for present purposes that the judge's statements constituted a clear and unequivocal command not to mention the hearing on voir dire. The charge based on violation of this command was criminal in nature. *Berlandi* v. *Commonwealth,* 314 Mass. 424, 433. See *Telegram Newspaper Co.* v. *Commonwealth,* 172 Mass. 294, 296–297; *Globe Newspaper Co.* v. *Commonwealth,* 188 Mass. 449, 453; *Blankenburg* v. *Commonwealth,* 260 Mass. 369, 373; *Woodbury* v. *Commonwealth,* 295 Mass. 316, 322–323; Mottla, Civil Practice (3d ed.) § 14. It had to be proved beyond a reasonable doubt. *Gompers* v. *Bucks Stove & Range Co.* 221 U. S. 418, 444, and cases cited. *Parker* v. *United States,* 153 F. 2d 66, 70–71 (1st Cir.). *Lord* v. *Kelley,* 240 F. Supp. 167, 170 (D. Mass.). We are not persuaded that the petitioner was shown to be guilty of the clear and undoubted disobedience requisite for a finding of criminal contempt.

The Commonwealth also contends that, wholly apart from the court order, the publication in and of itself constitutes "a clear and present danger to the administration of justice." We need not discuss the point. The trial judge completely exonerated the Springfield Union, the newspaper that published the petitioner's article. He thus made it clear that the only ground on which the petitioner was convicted was disobedience of the court order and not the prejudicial nature of the article itself, a ground upon which the publishing newspaper would have been as culpable as the petitioner. See *Telegram Newspaper Co.* v. *Commonwealth,* 172 Mass. 294, 296–297.

---

[1] See also "Standards Relating to Fair Trial and Free Press," approved by House of Delegates, American Bar Association, February 19, 1968, Part IV, 4.1(b).

The petitioner is entitled to costs, to be paid by the county of Hampden. G. L. c. 250, § 12. *Garabedian* v. *Commonwealth*, 336 Mass. 119, 126.

> *Judgment of sentence reversed.*
> *Petitioner to be discharged,*
> *and awarded judgment for costs*
> *against the Commonwealth to*
> *be paid by the county of Hampden.*