SCHOOL COMMITTEE OF NEW BEDFORD & another *vs.*
GERALD E. DLOUHY & others
(and a companion case).

Bristol. December 11, 1970. — June 30, 1971.

Present: SPALDING, CUTTER, SPIEGEL, REARDON, & QUIRICO, JJ.

*Equity Pleading and Practice,* Consent decree, Waiver, Contempt proceeding, Appeal. *Contempt. Waiver. Damages,* For contempt. *Municipal Corporations,* Damages from strike.

No appeal lay in a suit in equity from a final decree stating that "all parties by counsel in open court" consented to its entry. [111–112]

At a hearing in a suit in equity of a petition alleging that the defendants had violated a restraining order therein and praying that they be adjudged in contempt, admissions of guilt of civil contempt by the defendants in open court operated as a waiver of their right to have a trial on the contempt charges, and precluded them from raising in this court on appeal from the final decree legal and constitutional, but nonjurisdictional, questions which they raised before the trial judge prior to admitting their guilt. [113]

At a hearing in a suit in equity by a city and its school committee to ascertain the damages caused to the city by an admitted civil contempt of the defendants, who were officers or members of an unincorporated association of schoolteachers of the city, and a director of the association's State affiliate, through violations of an order restraining the defendants from engaging in or inducing a strike by the teachers of the city, testimony by the superintendant of schools culminating in a statement that a "fair figure" and a "conservative figure" for the total expense caused to the city by the violations would be $100,000 warranted a finding by the trial judge that the loss to the city was in that amount, and, where he

further found that "the responsibility for the situation that arose must be shared equally" by the plaintiffs and the defendants, this court affirmed an order in the final decree that the defendants pay $50,000 as a fine "to compensate the . . .[city] for damages as a result of said civil contempt." [113–115]

This court, upon appeal by the defendants from the final decree in a suit in equity, was precluded from considering a letter written to them after entry of the decree. [115–116]

Where a defendant in a suit in equity admitted guilt of civil contempt for violation of a restraining order, but never admitted guilt of alleged criminal contempt not committed in the presence of the court and was never put on trial on charges of such criminal contempt, this court on appeal from the final decree ordered struck therefrom provisions adjudicating the defendant guilty of such criminal contempt and ordering him to pay a fine therefor. [116–117]

TWO BILLS IN EQUITY filed in the Superior Court on September 16, 1968, and September 3, 1969, respectively.

The suits were heard by *Ponte*, J.

*Robert H. Chanin* of New York (*Jeffrey M. Freedman* with him) for the defendants.

*Arthur J. Caron, Jr.*, Assistant City Solicitor (*Malcolm Jones*, City Solicitor, with him) for the plaintiffs.

QUIRICO, J. These are two bills in equity entered in the Superior Court on September 16, 1968, and September 3, 1969, respectively. The plaintiffs in each bill are (a) the school committee of New Bedford (school committee) and (b) the city of New Bedford (city). The defendants in each bill are (a) certain named persons[1] who are made defendants individually and in their representative capacities as officers and members of an unincorporated association (Association)[2] which is the collective bargaining agent for all of the schoolteachers employed by the city, (b) all the members of the Association, and (c) Frederick J. Lambert who is described as the Director of Field Services of the Massa-

---

[1] The first bill names sixteen such persons. The second bill names two such persons and they are different from the sixteen named in the first bill.

[2] The first bill describes the unincorporated association as the New Bedford Teachers Association. The second bill describes it as the New Bedford Educators' Association. The record gives no explanation of this difference of names.

chusetts Teachers Association of which the Association in New Bedford is an affiliate.

The plaintiffs seek by each bill to restrain and enjoin the defendants other than Lambert from engaging in a work stoppage or withholding of their services from the city, or engaging in or inducing or encouraging the withholding of services by the teachers of the city's school department. They also seek by each bill to restrain and enjoin the defendant Lambert from inducing or encouraging a work stoppage or withholding of services by these teachers. In each case the court granted such relief in the following stages: by a restraining order, by a preliminary injunction, and by a final decree. The final decree in the 1969 case further held forty-eight defendants, including Lambert, in civil contempt of court and imposed compensatory fines on them, and also held Lambert in criminal contempt of court and imposed a fine on him therefor. The cases are before us on the defendants' appeals from the final decrees in both cases.

1. *Appeal from Final Decree in 1968 Case.* The final decree in the 1968 case permanently enjoined the defendants other than Lambert "from engaging in a work stoppage or withholding of services . . . or inducing or encouraging the withholding of services by the teachers of the New Bedford School Department," and it permanently enjoined Lambert "from inducing or encouraging a work stoppage or withholding of services by teachers employed by the City of New Bedford." The decree states that "all parties by counsel in open court" consented to its entry. "The decree appearing to be made by consent, the appeal cannot be sustained." *Winchester* v. *Winchester*, 121 Mass. 127, 128. See *Evans* v. *Hamlin*, 164 Mass. 239, 240; *New York Cent. & Hudson River R.R.* v. *T. Stuart & Son Co.* 260 Mass. 242, 248; *Fishman* v. *Alberts*, 321 Mass. 280, 281–282. The final decree in the 1968 case, having been entered by consent of all of the parties, must stand.

2. *Appeal from Final Decree in 1969 Case — Permanent Injunction.* Paragraphs numbered 1 and 2 of the final

decree in the 1969 case permanently enjoin the defendants in that case in substantially the same language used in the final decree entered in the 1968 case discussed above. There is a difference in the names of the persons, other than Lambert, who are enjoined, but that difference does not affect our decision. The final decree in the 1969 case also recites that "counsel for each of the interested parties in open court" consented to paragraphs numbered 1 and 2 thereof. By reason of such consent, those two paragraphs, which permanently enjoin them from doing the acts set forth therein, must stand. What we have said above with reference to the final decree in the 1968 case applies equally to them.

3. *Appeal from Final Decree in 1969 Case — Adjudication of Civil Contempt.* On September 3, 1969, a judge of the Superior Court issued a restraining order against the defendants in the 1969 case, using therein the same language which he later incorporated in the first two numbered paragraphs of the final decree discussed above. On September 4, 1969, the plaintiffs filed a petition alleging that the defendant Lambert and 183 named teachers who were members of the New Bedford Educators' Association had violated the restraining order and asked that Lambert and such teachers be adjudged in contempt for such violation. When this petition was reached for hearing, counsel for the defendants stated to the court: "[M]y clients are all now, each and individually, every one of them, prepared and ready to plead guilty to what they understand is a charge of civil contempt." Thereupon the judge stated: "[T]he clerk will call the name of each person who has been cited for contempt. The clerk will inquire after the name has been called: Do you admit the allegation of contempt, or do you deny it. If you admit it, then I want each defendant as their name is called, to say, 'I admit.' If you deny it, then as your name is called, you say, 'I deny.'" The clerk then called the names of Lambert and of forty-seven other persons who were defendants in the petition for contempt. As

each name was called, the person whose name was called replied, "I admit" or "I admit it."[3]

These defendants who in open court admitted the charges of civil contempt made against them thereby waived their right to have a trial on their innocence or guilt, and waived the necessity of having their accusers present evidence in support and proof of the charges. The waiver resulting from their admission of the charges was the same as that which would result from the entry of a plea of guilty by a defendant charged in a criminal complaint or indictment. "If there were any nonjurisdictional defects in the proceedings prior to the time when the defendant pleaded guilty, they were rendered irrelevant by such pleas. By pleading guilty the defendant foreclosed his right to request a decision by this court on legal questions which he had raised prior to entering the guilty pleas. He may not waive or terminate a trial by pleading guilty, sample the penalty and then elect to litigate preëxisting nonjurisdictional legal questions." *Commonwealth* v. *Zion,* 359 Mass. 559, 563, and cases cited therein. By reason of their admission of guilt of civil contempt, such defendants cannot now require us to decide the many legal and constitutional, but nonjurisdictional, questions which they raised before the trial judge prior to admitting their guilt. They had raised substantially the same questions in their motion filed on September 10, 1969, to dissolve the restraining order of September 3, 1969, which is the basis of the petition for contempt. The motion was impliedly denied on September 10, 1969, when the judge entered a preliminary injunction in the same language as that contained in the restraining order. After such defendants admitted their guilt of civil contempt, nothing remained to be done by the court except to determine the disposition to be made thereof.

---

[3] The difference between this total of forty-eight persons admitting civil contempt and the total of 183 accused in the petition for contempt is not explained in the record, and it has no bearing on our decision.

4. *Appeal from Final Decree in 1969 Case: Amounts of Fines Imposed for Civil Contempt.* As a part of the final decree which adjudged certain defendants guilty of civil contempt, the court also imposed a fine of $50,000 on them and the defendant Lambert. As to each of these fines the decree stated that it was "to compensate the . . . [city] for damages as a result of said civil contempt." It also provided that the payment of $50,000 to the city "by one or all of said respondents on the civil contempts shall constitute full compliance with said orders for payment for civil contempts."

After such defendants admitted their guilt of civil contempt and before fixing the amount of the fines therefor, the judge held a hearing to receive evidence on the amount of damages which their contempt had caused to the city. The superintendent of schools testified that despite the work stoppage, many principals, directors, teachers, substitute teachers and cafeteria workers reported for work at schools which had to be closed and those persons had to be paid, that school buses were operated to the schools which had to be closed, that there were charges for utilities serving the schools on the days they had to be closed, and that the days of school thus lost would have to be made up later at which time the same expenditures would be required. He estimated that the total expense to the city for these categories would be about $79,172,[4] and that there were some variables and additional items of expense to the city which he could not compute at that time but which he thought would bring the total expense to the city to $100,000. He believed the latter figure to be a "fair figure" and a "conservative figure."

After hearing the evidence and statements by counsel the

---

[4] In arriving at this figure the superintendent said he was including payments of $60 a day to forty principals for eight days each and he computed this item at $11,200. The correct computation should be $19,200. With this correction, the categories of damages to which he testified included the following: $64,000 paid to teachers, $960 for school buses, $19,200 paid to principals, and $4,992 paid to cafeteria workers. These items alone amount to a total of $89,152 instead of the $79,172 stated by the witness.

judge reviewed the background of the controversy and then stated: "It is my judgment that the responsibility for the situation that arose must be shared equally by the . . . [plaintiffs] as well as by the . . . [defendants]. . . . I find on the evidence that the loss to the . . . [city] is $100,000." He then imposed the fines of $50,000. The judge's finding that the loss to the city was $100,000 was supported by the testimony of the superintendent of schools who was the only witness on that subject.

"In cases of civil contempt such as the one before us, a fine may be assessed for the benefit of a party who has suffered injury because of the contempt. As are damages in tort, the fine is designed to compensate the injured party for actual losses sustained by reason of the contumacious conduct of the defendant, i.e., for the pecuniary injury caused by the act of disobedience." *Lyon* v. *Bloomfield*, 355 Mass. 738, 744. *Root* v. *MacDonald*, 260 Mass. 344, 361–365. The fine in such a case may also be designed to reimburse the plaintiff for counsel fees and other expenses incurred in enforcing his rights. *Grunberg* v. *Louison*, 343 Mass. 729, 736. *Parker* v. *United States*, 126 F. 2d 370, 379–380 (1st Cir.).

The defendants who were fined question the amount of the fine of $50,000 levied against them for the benefit of the city and they do so before this court on the basis of a letter which they allege the superintendent of schools wrote them on August 26, 1970, almost a year after the fine was imposed.[5] The letter obviously was not before the trial judge who imposed the fine on September 18, 1969. "[T]his court, upon appeal, is precluded from considering matters that do not appear from the record to have been before the trial court. . . . This practice is adhered to whether the matters sought to be presented and not in the record are in the form of exhibits or of other documents . . . or whether

---

[5] The letter lists amounts for items adding up to $74,957.47 and describes them as "the expenses incurred because of the extra days in June 1970, stemming from the difficulties encountered during the first two weeks of September 1970 [*sic*]." It does not purport to cover the expenses incurred during the work stoppages in September, 1969.

they are set forth in briefs." *Gorey* v. *Guarente*, 303 Mass. 569, 570-571. *Coonce* v. *Coonce*, 356 Mass. 690. There was no error in the amount of the fines which the judge imposed on the defendants for the benefit of the plaintiffs.

5. *Appeal from Final Decree in 1969 Case: Adjudication that Lambert is Guilty of Criminal Contempt.* After the judge heard the evidence from the superintendent of schools on the damages sustained by the city, and before he announced his decision thereon, he asked counsel for the plaintiffs what the evidence he "would have presented to the Court in the event of a trial . . . [would disclose] as to the leader in this strike, the guiding influence." Counsel answered in part that "the officers of the Association and Mr. Lambert would have been shown to have influenced the events of the last few days." The judge asked counsel for the defendants for some background information on Lambert and it was given to him. Without further hearing or evidence the judge then announced his finding that "Lambert was the director of the conduct of the other defendants and all the members of the New Bedford Educators Association . . . [and] that his directing provided irresponsible leadership." He also stated: "I find Frederick J. Lambert guilty of criminal and civil contempt. On the criminal contempt, I impose a . . . fine of $5,000." This finding and fine were incorporated in the final decree, in addition to the findings and fines on civil contempt.

The defendant Lambert's admission of guilt was limited to civil contempt. He was never asked specifically whether he admitted guilt of criminal contempt, and he never specifically admitted such guilt. He was never put to trial on the question of criminal contempt, and no evidence was presented against him on that charge. The burden of proving that charge was on the plaintiffs, and it was not incumbent on Lambert to disprove it. This was not a case of a contempt which had occurred or been committed in the presence of the judge. It was a contempt sometimes referred to or described as an "indirect or constructive" contempt to dis-

tinguish it from a "direct" contempt committed in the presence of a judge who may act thereon summarily. *Berlandi* v. *Commonwealth,* 314 Mass. 424, 445–446.

"The punishment of . . . [criminal contempt] is solely for the vindication of public authority and the majesty of the law. In general, the proceedings leading up to the punishment should be in accordance with the principles which govern the practice in criminal cases. In a broad sense, the prosecution of such an offender is a criminal case, and the sentence to punishment is a judgment." *Hurley* v. *Commonwealth,* 188 Mass. 443, 445. *Woodbury* v. *Commonwealth,* 295 Mass. 316, 323. *Dolan* v. *Commonwealth,* 304 Mass. 325, 327. In such a prosecution, "the accused should be advised of the charges and have a reasonable opportunity to meet them by way of defense or explanation." *Cooke* v. *United States,* 267 U. S. 517, 537. *Garabedian* v. *Commonwealth,* 336 Mass. 119, 124–125.

The proceedings which concluded with the finding that Lambert was guilty of criminal contempt and the imposition of a fine of $5,000 on him did not comply with the basic requirements applicable to such cases. That adjudication therefore cannot stand.

In summary, (a) the final decree in the 1968 case is affirmed with costs of appeal to the plaintiffs, and (b) the final decree in the 1969 case is modified by striking therefrom so much of paragraph numbered 3 as holds the defendant Lambert guilty of criminal contempt and by striking therefrom paragraph numbered 4 imposing a fine of $5,000 on him for criminal contempt; as thus modified that final decree is affirmed.

*So ordered.*