LYNDA KHOURIE FURTADO *vs.* NELSON MIRANDA FURTADO.

Middlesex.    December 15, 1978. — May 8, 1979.

Present: KEVILLE, GOODMAN, & ARMSTRONG, JJ.

*Contempt.*

Where a plaintiff brought a complaint for civil contempt against her former husband for failure to pay child support as ordered by a Probate Court and subsequently a judge of the Probate Court made the notation that "in view of flagrant disregard of court order" the defendant was advised that the case would be considered as criminal contempt, the judge's notation did not cure the failure of the complaint to set out any "special elements of contumacy" and did not serve to give the defendant notice of specific acts which could serve as a basis for criminal contempt proceedings. [524]

A finding that a defendant had ability to pay, and did not pay, child support as ordered by a Probate Court did not, without more, make out a case of criminal contempt. [524-525]

---

*wealth* v. *Grant*, 352 Mass. 434, 437-438 (1967); *Commonwealth* v. *Soroko*, 353 Mass. 254, 260-261 (1967).

Where there was no evidence in the record of a criminal contempt
    proceeding that the defendant had failed to appear for a hearing in
    an action for civil contempt, it was improper for the judge to rely
    on matters which he learned outside the hearing in finding that the
    defendant had "unwarrantedly impeded the administration of jus-
    tice." [525-526]
Addendum by GOODMAN, J., discussing the procedure for criminal
    contempt proceedings in the Probate Court. [526-528]

CIVIL ACTION commenced in the Probate Court for the
county of Middlesex on August 18, 1975.

A petition for contempt filed on September 10, 1976,
was heard by *Martin, J.*

*David Goldman* for the defendant.

*David H. Lee* for the plaintiff.

GOODMAN, J. The basis of this proceeding is a complaint
filed Sepember 10, 1976, specifically for civil contempt.
(The word "criminal" had been struck in the form used,
Mass.R.Dom.Rel.P. Form 103 [1975].) The complaint al-
leges that the defendant "has not obeyed" a judgment
entered on April 29, 1976, which ordered him to pay child
support of $35 per week, plus $5 per week on account of
accumulated arrearages. Payments were to be made di-
rectly to the Family Service Office of the Probate Court.
The complaint further alleges that the defendant "has
violated the order on May 1, 1976 and on various other
occasions thereafter by not paying the support order of
$40 as ordered on April 29, 1976. The Defendant has
made only five (5) payments since the date of the Court
order." The complaint was brought on the plaintiff's be-
half by the Middlesex Probate Probation Department.
G. L. c. 276, § 85B.

From the docket and the notations on the complaint, it
appears that the complaint was returnable on November
4, 1976, when the defendant was defaulted and a capias
issued. (The defendant had been served on October 9,
1976.) As appears from the capias, the defendant was not
arrested until May 23, 1977, when he was brought before
the court. The case was continued to June 28, 1977, and

then to July 20, 1977, and finally to August 17, 1977, the date of the hearing on the complaint. On June 28, 1977, the judge made the notation set out in the margin.[1] Subsequently, a lawyer from the Cambridge and Somerville Legal Services filed an answer for the defendant and appeared at the hearing. The evidence was taken by a stenographer (see Mass.R.Dom.Rel.P. 80 [1975]), and the judge filed a "Statement of Findings." The judgment is set out in the margin.[2]

The course of these proceedings parallels *Ainslie* v. *Ainslie*, 6 Mass. App. Ct. 692 (1978), and we reverse the judgment on the principles set out in that case. See *Bolduc* v. *Dahlstedt*, 6 Mass. App. Ct. 946 (1978). As we said in the *Ainslie* case at 694, "The complaint . . . does not set out any 'special elements of contumacy.' *Cherry* v. *Cherry*, 253 Mass. 172, 175 (1925), quoting *Gompers* v. *Bucks Stove & Range Co.*, 221 U.S. 418, 442 (1911). *Root* v. *MacDonald*, 260 Mass. [344,] 358 [1927] (no 'distinctively criminal feature')." Further, "[t]he judge's notation . . . [see fn. 1, *supra*] that the proceeding was to be treated as criminal contempt does not cure the difficulty in the complaint; it does not serve to give the defendant notice of 'specific acts' which can serve as a basis for criminal contempt proceedings. *Meranto* v. *Meranto*, 366 Mass. 720, 724 (1975)." *Ainslie* v. *Ainslie*, 6 Mass. App. Ct. at 694-695.

We have also examined the transcript of the testimony and the findings by the judge. The transcript contains evidence that during the period April 29, 1976, to August

---

[1] "6-28-77 D[efendant] advised that in view of flagrant disregard of Court order, case would be considered as Criminal Contempt; D[efendant] advised to hire attorney or procure attorney from legal service agency and be present in Court on 7/20/77, to which date case is continued, prepared to defend a charge of Criminal Contempt. Order to stand."

[2] "After hearing, it is adjudged that defendant is guilty of criminal contempt of this court, and is sentenced to thirty (30) days for the reasons set forth in the Statement of Findings annexed hereto and incorporated herein."

27, 1976, the defendant made five (5) payments of $40 each; the first on May 3, 1976, and the last on July 6, 1976, and that during the period April 29, 1976, to August 27, 1976, the defendant was employed, with a take home pay ranging between $173.03 and $67.22.[3] While an inference of ability to pay the $40 order during that period was permissible,[4] this without more does not, as we held in *Ainslie* v. *Ainslie,* 6 Mass. App. Ct. at 693-694, make out a case of criminal contempt (compare *Commonwealth* v. *Zarrilli,* 5 Mass. App. Ct. 518, 520 [1977], dealing with the different crime of nonsupport under G. L. c. 273, § 1).

The plaintiff asks us to find criminal contempt from the finding of the defendant's ability to pay the order and the further finding that "[t]he continued defiance by the Defendant of lawful orders of various judges of the Middlesex Probate Court constitute such open and notorious examples of contempt of court that they violated the orderly processing of the courts functions and unwarrantedly impeded the administration of justice." It may well be that a defendant's failure to appear — to which this finding may refer — could, in appropriate circumstances, so color a civil contempt "as to permit a finding beyond a reasonable doubt . . . [cases cited] of such interference with or manipulation of the judicial process, beyond the disregard of a court order [to pay] as to warrant punishment for criminal contempt." *Ainslie* v. *Ainslie,* 6 Mass. App. Ct. at 695. And thus, too, a defendant who falsifies financial information or who deliberately pauperizes himself by terminating his employment or by divesting himself of property may well be subject to criminal contempt. *Bennett* v. *Bennett,* 21 N.C. App. 390, 393 (1974).

---

[3] The findings set out a weekly "net pay" which is more than the figure set out in the transcript by $35.00, a weekly payment to a credit union.

[4] On August 27, 1976, he had lost his job; and (from the testimony at the hearing) since then to the date of the hearing he had no ability to make the payments.

Cf. *Langford* v. *Langford*, 253 Miss. 483, 484-485 (1965); 53 A.L.R.2d 591, 617-618 (1957).

In this case the transcript is devoid of any mention of the failure to appear. The defendant was never confronted at the hearing on the criminal contempt with the default and thus given an opportunity to explain. It appears that the judge was relying on matters which he learned outside the hearing. But it is elementary that "[r]eliance by the judge on information gathered outside the hearing would ,... be improper." *Sodones* v. *Sodones*, 366 Mass. 121, 127 (1974). See *Day* v. *Crowley*, 341 Mass. 666, 669-670 (1961).

Accordingly, as we said in the *Ainslie* case at 696, "there is neither a foundation for criminal contempt nor, for that matter, for imprisonment for civil contempt. [See fn. 4, *supra.*] *Sodones* v. *Sodones*, 366 Mass. at 130." As in *Ainslie*, the judgment is reversed, and the case is remanded to the Probate Court for further consideration of civil contempt in the light of the defendant's present circumstances. *Ainslie* v. *Ainslie*, at 696, citing *Sodones* v. *Sodones*, 366 Mass. at 131.

*So ordered.*

ADDENDUM BY GOODMAN, J. I believe that it may be useful to emphasize that "criminal contempt is a crime in every fundamental respect." *Bloom* v. *Illinois*, 391 U.S. 194, 201 (1968). *Gompers* v. *United States*, 233 U.S. 604, 610 (1914). *Hurley* v. *Commonwealth*, 188 Mass. 443, 445 (1905). *School Comm. of New Bedford* v. *Dlouhy*, 360 Mass. 109, 117 (1971). Thus, Rule 44 of the new Massachusetts Rules of Criminal Procedure, effective July 1, 1979, provides that contempt in the Superior and District Courts — apart from summary contempt proceedings under Rule 43[1] — "shall proceed as a criminal case" to be

---

[1] Rule 43 provides for limitations when "summary punishment is necessary to maintain order in the courtroom." The Reporter's *Notes*

"prosecuted by means of complaint, unless the prosecutor elects to proceed by indictment." While Form 103 of the Massachusetts Rules of Domestic Relations Procedure (1975) which is applicable to "civil and/or criminal contempt" may indicate that something less rigidly structured is sufficient for criminal contempt in the Probate Court than for criminal contempt in the Superior and District Courts, it is still necessary that a trial for criminal contempt in the Probate Court comport with fundamental notions of a fair criminal proceeding. This, it seems to me, makes dubious the propriety of a trial before a judge who initiates criminal proceedings for indirect contempt (see fn. 1 to the opinion and text to which it is appended). See *In re Murchison*, 349 U.S. 133, 137 (1955) ("Fair trials are too important a part of our free society to let prosecuting judges be trial judges of the charges they prefer"); *Haley* v. *Troy*, 338 F. Supp. 794, 803 (D. Mass. 1972). Even more dubious is the propriety of a proceeding (other than a summary proceeding) in which the judge is the sole prosecuting official and conducts the entire direct examination. Undoubtedly a judge may properly question a witness, "so long as the examination is not partisan in nature, biased, or a display of belief in the defendant's guilt." *Commonwealth* v. *Festa*, 369 Mass. 419, 422 (1976). Cf. *Commonwealth* v. *Sneed*, 376 Mass. 867, 870 (1978). The judge's role is that of an impartial arbiter and not that of a prosecutor. *Figueroa Ruiz* v. *Delgado*, 359 F.2d 718, 721-722 (1st Cir. 1966), cited in *Haley* v. *Troy*, 338 F. Supp. at 803-804.

Since the probation officers who testified were only witnesses, it was not necessary to address in the opinion

---

to that rule state that "summary proceedings are available *only* when they are necessary to preserve order" (emphasis in original). 3 Rules of the Courts of the Commonwealth, Crim.P. 283 (MCLE-NELI 1979). See *Codispoti* v. *Pennsylvania*, 418 U.S. 506, 514, 515 (1974), and *Sussman* v. *Commonwealth*, 374 Mass. 692, 696 (1978), both cited in the Reporter's Notes, *supra*.

the contention raised by the defendant that the probation officers were improperly practicing law. In this connection, however, there should be noted the controversy surrounding the presentation of cases for the Department of Public Welfare under G. L. c. 18, § 21 (see Hammer, Activities of Massachusetts Bar Association Unauthorized Practice of Law Committee, 39 Unauthorized Practice News 36, 37 [1974]), and the presentation of cases in the District Courts by the police. See Mass.R.Crim.P. 2 (b) (13), (effective July 1, 1979). But see Fiftieth Report of the Judicial Council, 1974 Pub. Doc. No. 144, at 34; Bing & Rosenfeld, The Quality of Justice in the Lower Criminal Courts of Metropolitan Boston 29-30 (Lawyers Committee for Civil Rights under Law 1970). In the first instance, what is indicated, it seems to me, is an administrative assessment of the various alternatives, including, e.g., whether it is practical to refer criminal contempts to the District Attorney (see *Blankenburg* v. *Commonwealth*, 260 Mass. 369, 378 footnote [1927]); whether it would be proper for the plaintiff in the main action to prosecute the criminal contempt, in view of the well settled stricture against prosecution in the public interest by one who has a private interest in the matter (*Commonwealth* v. *Tabor*, 376 Mass. 811, 817-820 [1978]); and whether it is feasible or necessary to hire lawyers for the probation department to prosecute criminal contempts (but see Forty-first Report of the Judicial Council, 1965 Pub. Doc. No. 144, at 65, indicating that the primary responsibility of the probation officers was intended to be civil). Consideration might also be given to legislation making it a misdemeanor to disobey a support order. See G. L. c. 208, § 34C, and G. L. c. 273, § 1, as analogies.