LYNDA KHOURIE FURTADO vs. NELSON MIRANDA FURTADO.

Middlesex. December 3, 1979. — March 14, 1980.

Present: HENNESSEY, C.J., QUIRICO, WILKINS, LIACOS, & ABRAMS, JJ.

*Contempt. Practice, Criminal,* Contempt proceeding, Fair trial. *Evidence,* Admissions and confessions, Business record. *Unauthorized Practice of Law. Judge.*

Discussion of criminal contempt proceedings with respect to an individual's failure to comply with an order of support. [140-144]

A complaint alleging the existence of an order of support, describing its requirements, and stating its continuing effect, and alleging that the defendant had disobeyed and violated that order, when combined with the judge's order made in open court in the defendant's presence that the case be treated as a criminal contempt, was adequate notice of the criminal contempt charge. [144-146]

Upon appeal from a finding of criminal contempt with respect to the defendant's failure to comply with an order of support, there was no merit to the defendant's claim that his conviction must be reversed because his Miranda rights were violated in the course of two conversations with a probation officer where no statement of his was introduced against him at the trial and no evidence introduced against him was the product of any statement made by him. [146-147]

Probate Court probation officers are authorized by G. L. c. 276, § 85B, to file criminal as well as civil complaints for contempt. [147-148]

In a proceeding for criminal contempt with respect to the defendant's failure to comply with an order of support, evidence that there was an outstanding support order, that the defendant knew of the order, and that he failed to make payments although he had the means to do so warranted a finding of criminal contempt. [149-150]

A conviction of criminal contempt with respect to the defendant's failure to comply with an order of support was reversed where the proceeding appeared to be unfair because the judge, in the absence of a prosecutor, participated in the presentation of evidence against the defendant by questioning a probation officer of the Probate Court. [151-152]

CIVIL ACTION commenced in the Probate Court for the county of Middlesex on August 18, 1975.

A petition for contempt, filed on September 10, 1976, was heard by *Martin,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*David Goldman* for the defendant.

*David H. Lee* for the plaintiff.

WILKINS, J.  The defendant was convicted of criminal contempt in the Probate and Family Court of Middlesex County (Probate Court).  His sentence of thirty days was stayed pending his appeal.  The Appeals Court reversed the conviction and remanded the case to the Probate Court for further consideration of civil, but not criminal, contempt. *Furtado* v. *Furtado,* 7 Mass. App. Ct. 522 (1979).  The Appeals Court held that the complaint was inadequate as a complaint for criminal contempt because it did not set forth any special elements of contumacy. *Id.* at 524.  That court further concluded that the evidence did not justify a finding of criminal contempt. *Id.* at 525.  We granted the plaintiff's application for further appellate review.

We disagree with these conclusions of the Appeals Court.  The complaint, as supplemented by an order of a Probate Court judge, was sufficient to allege a criminal contempt of court and to give the defendant adequate notice of the charge.  Further, the evidence warranted a finding of criminal contempt.  We reject certain other arguments of the defendant.  The record presents a problem, however, which the Appeals Court did not reach due to its disposition of the case.  The judge's participation in the presentation of the evidence against the defendant cast the judge in a dual role which may have denied the defendant a trial before a neutral and impartial trier of fact.  For this reason, we reverse the conviction and remand the matter for a new trial on the criminal contempt charge.

On April 29, 1976, a judge of the Probate Court granted the plaintiff a judgment of divorce nisi.  The plaintiff received custody of a minor daughter, and the defendant was ordered to pay $40 a week on each Saturday "direct[ly] to the Family Service Office of this Court."  Part of that

amount was intended to make up arrears in support payments, which had been ordered previously.

On September 10, 1976, a complaint for civil contempt was filed by the Probate Court for Middlesex County probation department on behalf of the plaintiff. The complaint, which appears to be on a standard form, alleged that the defendant was ordered by a judgment, dated April 29, 1976, to pay $40 a week for support of his minor child and that the judgment was still in force. The complaint further alleged that the defendant had not obeyed that judgment; that $1,970 remained due and unpaid; and that the defendant had violated the order on May 1, 1976, and on various other occasions thereafter, by not paying the ordered support, adding that the defendant had made only five payments since the date of the court order. The complaint concluded by demanding that the defendant appear to show cause why he should not be adjudged "in civil contempt of Court." The words "and/or criminal" printed on the form after the word "civil" were struck.

When the defendant did not appear in response to the complaint, a capias for his arrest was issued on November 4, 1976. A deputy sheriff arrested the defendant and brought him before the Probate Court on May 23, 1977, at which time a Probate Court judge appointed counsel for the defendant. The matter was continued to June 28, 1977, when the judge made the following notation on the complaint for contempt: "D advised that in view of flagrant disregard of Court order, case would be considered as Criminal Contempt; D. advised to hire attorney or procure attorney from legal service agency and be present in Court on 7/20/77 to which date case is continued, prepared to defend a charge of Criminal Contempt." The case was continued again to August 17, 1977, and was heard by the same judge who entered the order purporting to change the complaint to one for criminal contempt. We defer presentation of facts relating to issues arising out of the conduct of the trial until we discuss those issues.

The judge filed a "Statement of Findings."[1]  His essential findings were that between April 29, 1976, and August 27, 1976, the defendant was gainfully employed, earning net weekly wages ranging from a low of $102.22 to a high of $208.03.  The defendant made five payments of $40 each to the probation department.  He knew of the support order, and, although he had sufficient net earnings each week from May 5, 1976, to August 25, 1976, to pay the amount ordered, he wilfully refused to do so, except on five occasions.  The judge concluded that the defendant's defiance of lawful orders was contempt of court, because the defendant's noncompliance violated "the orderly processing of the court['s] functions and unwarrantedly impeded the administration of justice."[2]

1. Before considering the defendant's challenges to the determination of his criminal contempt of court, we think it appropriate to set forth our views of criminal contempt, particularly with respect to an individual's failure to comply with an order of support.[3]  There is reason to believe

---

[1] Some of the facts recited by the judge appear in the docket entries, although the docket entries were not introduced at the trial.  Certain other facts are recited from the judge's memory or perhaps from notes of earlier proceedings in this case.  The judge appears to have set out these extraneous facts as a matter of background; they are not essential to a finding of criminal contempt on this record.  In our decision in this case, we rely on no facts except those shown at the trial.  A judge may not rely on his private knowledge of particular facts that are not matters of which he can take judicial notice.  See *Nantucket* v. *Beinecke,* 379 Mass. 345, 352 (1979); *Ferriter* v. *Borthwick,* 346 Mass. 391, 393 (1963).

[2] The judge's references to the defendant's defiance of orders other than the one referred to in the complaint are inappropriate.  The complaint only referred to the violation of the support order of April 29, 1976, and the evidence at the trial only dealt with the alleged violation of that particular order.  See *Mills* v. *Mills,* 4 Mass. App. Ct. 273, 278 (1976).

[3] This opinion does not consider instances of direct criminal contempt, that is, cases in which the contumacious conduct occurred in the presence of the judge.  Such cases may be dealt with in summary contempt proceedings "when essential to the orderly administration of justice." *Opinion of the Justices,* 314 Mass. 767, 784 (1943).  See *Sussman* v. *Commonwealth,* 374 Mass. 692, 695-699 (1978); Mass. R. Crim. P. 43, 378 Mass.

that there is a good measure of confusion and uncertainty on this subject among judges and attorneys who deal with the question in the Probate and Family Department of the Trial Court. See McLellan, Contempt Actions in the Probate and Family Department, 23 B.B.J. No. 11, at 5 (1979).

A contempt proceeding for failure to comply with a support order may be brought as a civil contempt proceeding, as a criminal contempt proceeding, or as both a criminal and a civil contempt proceeding. See *Godard* v. *Babson-Dow Mfg. Co.,* 319 Mass. 345, 347 (1946). Compare *Sodones* v. *Sodones,* 366 Mass. 121, 129-130 (1974), with *Kelley, petitioner,* 292 Mass. 198, 200 (1935). Of course, there must have been a valid court order in effect on which to base the claim of contempt. See *Nickerson* v. *Dowd,* 342 Mass. 462, 464 (1961).

There is a reasonably clear distinction between a civil contempt proceeding and a criminal contempt proceeding in terms of the purpose of the judgment. See *Krokyn* v. *Krokyn,* 378 Mass. 206, 207 n.3 (1979); *Sodones* v. *Sodones, supra* at 130. Civil contempt proceedings are "remedial and coercive," intended to achieve compliance with the court's orders for the benefit of the complainant. *Cherry* v. *Cherry,* 253 Mass. 172, 174 (1925). A contempt proceeding for nonpayment of alimony or support "has never been regarded as partaking of criminal features" (see *Blankenburg* v. *Commonwealth,* 260 Mass. 369, 373 [1927], S.C. 272 Mass. 25 [1930], cert. denied, 283 U.S. 819 [1931]), or supposed to be "criminal as commonly administered" (see *Root* v. *MacDonald,* 260 Mass. 344, 355 [1927]). On the other hand, a criminal contempt proceeding is "exclusively punitive. It is designed wholly to punish an attempt to prevent the course of justice." *Blankenburg* v. *Com-*

---

919 (effective July 1, 1979). Thus, where the criminal contempt was direct, summary punishment is permitted only if necessary to maintain order in the courtroom. See *Miaskiewicz* v. *Commonwealth, post* 153, 156 (1980).

*monwealth,* 260 Mass. at 373. See *Cherry* v. *Cherry, supra* at 174.

If the contempt proceeding is criminal even in part, "the criminal feature must be regarded as dominant and fixing the character of the trial" (*Root* v. *MacDonald, supra* at 367), and, unless the contempt is one which may properly be dealt with summarily, the defendant is entitled to the protections normally accorded to criminal defendants under the law of the Commonwealth. See *Sodones* v. *Sodones,* 366 Mass. 121, 127 (1974). Due process requires that the alleged contemnor be advised of the charges against him and that he have a reasonable opportunity to meet them by way of defense or explanation. *Id.* The defendant is entitled to counsel if a sentence of imprisonment may be imposed and may waive counsel only as provided by constitutional principles and applicable court rules. See *Meranto* v. *Meranto,* 366 Mass. 720, 724 (1975); S.J.C. Rule 3:10, as amended, 370 Mass. 911 (1976); Rule 402 of the Probate Courts (1977). The defendant may not be called as a witness against himself.[4] *Katz* v. *Commonwealth,* 379 Mass. 305, 314 (1979), and cases cited. The defendant is presumed to be innocent, and proof must be beyond a reasonable doubt. See *Root* v. *MacDonald,* 260 Mass. 344, 366 (1927); *Gompers* v. *Bucks Stove & Range Co.,* 221 U.S. 418, 444 (1911). The defendant is entitled to a trial by jury to the extent provided by the Constitution of the United States or of the Commonwealth and by any applicable rule of court.[5] Ordinarily, the crimi-

---

[4] A related question is whether a defendant must file an answer. The defendant did in this case after the judge had ordered that the matter be treated as a criminal contempt. Where the proceeding is in whole or in part a criminal contempt proceeding, constitutional considerations against compelling a criminal defendant to incriminate himself indicate that a defendant should not be compelled to file an answer, although he may do so voluntarily.

[5] There are no court rules governing the right to a jury trial in criminal contempt proceedings in the Probate and Family Court Department of the Trial Court. Under the Massachusetts Rules of Criminal Procedure, applicable to the Superior and District Court Departments, a defendant in circumstances similar to those in this case would be entitled to a trial by

nal contempt proceeding should be held in the court whose order is alleged to have been contumaciously violated.[6] Because of the marked procedural distinctions between a civil and a criminal contempt proceeding, obviously the character of the proceeding must be established before trial.[7]

In a criminal contempt proceeding involving an alleged failure to comply with an order to pay certain amounts for the support of a wife or a minor child, or both, one area of

jury because the proceeding is not one in which the alleged contempt could be dealt with summarily. Mass. R. Crim. P. 44, 378 Mass. 920 (1979). Under the Federal Constitution, no jury trial is required in a contempt proceeding unless the sentence imposed is greater than six months. *Bloom* v. *Illinois,* 391 U.S. 194, 210 (1968). *Cheff* v. *Schnackenberg,* 384 U.S. 373, 380 (1966). This court has not imposed a stricter mandate under the State Constitution for contempt proceedings. See *Matter of De-Saulnier (No. 3),* 360 Mass. 769, 774-775 (1971); *Dolan* v. *Commonwealth,* 304 Mass. 325, 340-341 (1939). On the other hand, we have never been squarely presented with the question of the extent to which the Constitution of the Commonwealth requires jury trials of criminal contempt proceedings. See *Opinion of the Justices,* 360 Mass. 877, 885 (1971). Massachusetts R. Crim P. 43 (b), 378 Mass. 919 (1979), provides for a right to a jury trial even where the alleged contempt is direct if the Superior Court or District Court judge determines that he might impose a sentence in excess of three months' imprisonment or a fine of five hundred dollars or more.

[6] Of course, the Legislature might make the failure to comply with a court order a separate crime subject to prosecution by a complaint or indictment filed in another department of the Trial Court. Such a statutory crime, however, would not bar the court which issued the order from punishing the individual for criminal contempt of court. See, e.g., *Kelley, petitioner,* 292 Mass. 198, 199 (1935); *Blankenburg* v. *Commonwealth,* 260 Mass. 369, 377 (1927), *S.C.* 272 Mass. 25 (1930), cert. denied, 283 U.S. 819 (1931).

We note G. L. c. 215, § 34, as amended by St. 1979, c. 522, § 3, states that "[t]he failure of a defendant to comply with an order of the court for the support of spouse or minor children at a time when the defendant possessed the ability to make the support payment as ordered by the court may be punished as a criminal contempt." Although that statutory language correctly states the law, the determination of what conduct constitutes contempt of court is inherently a judicial function. *Blankenburg* v. *Commonwealth,* 260 Mass. at 373.

[7] If a proceeding for contempt is changed from being solely civil in nature to being at least in part criminal in nature, it would be better practice to issue a new complaint clearly indicating the change. *Parker* v. *United States,* 153 F.2d 66, 70 (1st Cir. 1946).

possible difficulty concerns the defendant's ability to pay. Unlike the case of a civil contempt where the ability to pay must be found at the time the contempt order or judgment is entered (*Salvesen* v. *Salvesen*, 370 Mass. 608, 611 [1976]; *Sodones* v. *Sodones*, 366 Mass. 121, 130 [1974]), the judge in a criminal contempt proceeding may make a determination of contempt of court based on an ability to pay at the time of nonpayment, combined with a clear intention to disregard a valid court order. A showing that the defendant had adequate income to make payments in accordance with a court order, that he had knowledge of the order, and that he failed to make such payments would warrant an inference beyond a reasonable doubt that the defendant intentionally disregarded the court's order. In a particular case, such an inference might not be compelled, and, if certain mitigating circumstances were presented, the inference might not even be warranted. A defendant, for example, might be subject to a competing order of another court and may have expended his available funds to satisfy that obligation. A claim of mitigating circumstances might have to be advanced by the defendant, and perhaps even asserted before trial pursuant to court order or court rule. See, e.g., Mass. R. Crim. P. 14 (b) (2)(A) & (3), 378 Mass. 878, 880 (1979). If a defendant advances a claim of a mitigating circumstance, the burden remains on the Commonwealth to prove its case beyond a reasonable doubt. See *Mullaney* v. *Wilbur*, 421 U.S. 684, 704 (1975). The defendant does not have the burden of proving anything in mitigation. *Id.* at 702 & 702-703 n.31.

We turn now to the defendant's several arguments in support of his claim that the complaint must be dismissed or, at least, that his conviction must be reversed.

2. We reject the defendant's claim that he received inadequate notice of the criminal contempt charge. The Appeals Court concluded that the complaint did not set out any special elements of contumacy and that the defendant did not receive notice of specific acts which could serve as a basis for a criminal contempt proceeding. *Furtado* v. *Fur-*

*tado,* 7 Mass. App. Ct. at 524. We, of course, accept the concept that due process requires adequate notice of criminal or civil contempt charges against a defendant. *Sodones* v. *Sodones,* 366 Mass. 121, 128 (1974).

A charge of criminal contempt must set forth allegations that there was a clear, outstanding order of the court, that the defendant knew of that order, and that the defendant clearly and intentionally disobeyed that order in circumstances in which he was able to obey it. See *Shaw* v. *Commonwealth,* 354 Mass. 583, 586-587 (1968). Opinions of the Appeals Court say that a complaint like the one in this case fails to meet that standard. See *Furtado* v. *Furtado, supra* at 524; *Ainslie* v. *Ainslie,* 6 Mass. App. Ct. 692, 693-694 (1978). We disagree because the allegations in the complaint constitute an adequate claim of wilful defiance of the authority and power of the court.

The complaint alleges the existence of an order, describes its requirements, and states its continued effect. It further alleges that the defendant has disobeyed and violated that order. An allegation of disobedience and violation of an order imports the concept of a knowing and intentional failure to comply. An explicit allegation of a wilful failure to comply with the order would be appropriate, but those precise words are not necessary because technical accuracy of pleading is not required in criminal contempt cases. See *Fay* v. *Commonwealth,* 379 Mass. 498, 502 (1980). The complaint, considered in light of our opinions defining criminal contempt, sufficiently presented the prosecution's contention that the defendant had the capacity to comply with the order. Here, again, the complaint might have explicitly alleged the defendant's ability to comply, but the complaint was adequate to give notice of the prosecution's claim, when combined with the judge's order made in open court in the defendant's presence that the case be treated as criminal contempt. See *Fay* v. *Commonwealth, supra* at 503, and cases cited.

No objection was raised at trial to the adequacy of the notice. The trial proceedings show that defense counsel clearly understood that the matter was a criminal proceed-

ing and that the issue was whether the defendant had had the ability to comply with the order but wilfully had failed to comply with it. *Sodones* v. *Sodones,* 366 Mass. 121, 128-129 (1974). Plainly, the defendant had the notice required by due process of law.

3. There is no merit to the defendant's claim that his conviction must be reversed because his Miranda rights were violated in the course of two conversations with a probation officer. The first conversation was on May 23, 1977, about one month before the judge decided to treat the complaint as criminal. On that day, the defendant was in custody because he was brought in on a capias for failure to appear in court. The second conversation occurred on July 15, 1977, when the defendant came to the probation office voluntarily. By this time, the judge had made a determination to treat the proceeding as a criminal contempt case.

The short answer to the defendant's argument is that no statement of his was introduced against him at the trial and no evidence introduced against him was the product of any statement made by him. As will be seen, when the sufficiency of the evidence is discussed, the evidence introduced against the defendant had already been obtained from independent sources when these conversations occurred. See *Wong Sun* v. *United States,* 371 U.S. 471, 484-488 (1963). We further note that the defendant made no pretrial motion to suppress his statements, and he made no request for a voir dire hearing during the trial. Thus, the defendant has failed to make any showing that he was prejudiced by the absence of whatever Miranda warnings may have been required in the circumstances.

We need not decide how far Miranda requirements extend to conversations between a probation officer and a person who may have failed to comply with a support order. However, certain principles seem reasonably clear. If such a person appears voluntarily, before any criminal charge is brought, the individual is not "in custody" and Miranda warnings are not required. *Oregon* v. *Mathiason,* 429 U.S. 492, 494-495 (1977). *Beckwith* v. *United States,* 425 U.S.

341, 346-347 (1976). See *Commonwealth* v. *Simpson,* 370 Mass. 119, 125 (1976). If, however, the individual is in custody, even where no criminal charges are then contemplated, Miranda warnings appear to be required. See *Mathis* v. *United States,* 391 U.S. 1, 4 (1968). How far, if at all, constitutional considerations applicable to an interrogation by a probation officer are different from those applicable to an interrogation by a police officer we leave to another occasion, if it should arise.

4. The defendant argues that probation officers of the Probate Court engaged in the unauthorized practice of law in his case and, as a result, the complaint against him was a nullity and should be dismissed. The complaint, as initially filed, sought a finding of civil contempt and was signed in the name of the court's chief probation officer. Even if this action were improper, a judge considered the complaint and determined that it should be treated as a criminal contempt, thus removing any defect in the probation office's involvement. In any event, however, we do not regard as improper a probation officer's preparation and filing of a complaint for civil or criminal contempt, or both, pursuant to his statutory duties. The Legislature has said that a probation officer of a Probate Court "shall bring into court when necessary, by citation or otherwise, all persons who are delinquent in making payments ordered or decreed by the court." G. L. c. 276, § 85A, inserted by St. 1969, c. 771, § 3. Section 85B of G. L. c. 276 provides further that such an officer shall have full power to "do each and everything necessary, including initiating contempt proceedings, to collect any and all delinquent payments due to any person entitled under order or decree of [the] court." G. L. c. 276, § 83B, inserted by St. 1969, c. 771, § 3. We construe § 85B as authorizing Probate Court probation officers to file criminal as well as civil complaints for contempt.

It would not be improper for a probation officer to appear in a Probate Court for the purpose of prosecuting a contempt proceeding for nonsupport. Courts are the ultimate arbiters of who may practice law before them, but we

give substantial deference to the views of the Legislature on such a subject. See *Opinion of the Justices*, 289 Mass. 607, 612 (1934). The State's interest in compliance with support orders is substantial and is particularly intense in a case such as this, where, as we were told at oral argument, the defendant's child was receiving public assistance.[8] Police prosecutors, who normally are not members of the bar, customarily prosecute offenses, particularly minor offenses, in the District and Municipal Courts of the Commonwealth. The Massachusetts Rules of Criminal Procedure expressly state that a police officer may be a "prosecutor," as defined in rule 2 (b) (13), 378 Mass. 846 (1979). Thus, certain criminal proceedings may be prosecuted by a person who is not a member of the bar.

Of course, if the allegedly aggrieved person files a complaint for civil contempt seeking payment of court ordered support and is represented by private counsel, the probation department would appear to have no role in prosecuting the case, at least when no public assistance is being provided. If the contempt hearing includes both civil and criminal features, the plaintiff who initiated the proceedings could act in place of a prosecutor because "[p]rivate parties to civil litigation have the right 'to press both the civil and criminal aspects of the case.'" *Katz* v. *Commonwealth*, 379 Mass. 305, 312 (1979), quoting from *Root* v. *MacDonald*, 260 Mass. 344, 365 (1927). In fact, as long as the private party remained involved in the suit, there would be no need to appoint a prosecutor to represent the interests of the Commonwealth in a purely criminal contempt proceeding.[9] See *Katz* v. *Commonwealth, supra* at 312.

---

[8] See G. L. c. 18, § 21, authorizing the Department of Public Welfare to obtain court orders directing support payments in favor of any welfare recipient and to institute contempt proceedings for failure to comply with Probate Court support orders.

[9] As Justice Goodman noted in his addendum to the Appeals Court opinion (*Furtado* v. *Furtado*, 7 Mass. App. Ct. 522, 527-528 [1979]), no probation officer presented the case against the defendant.

There may be, of course, good practical reasons why an attorney should present contempt matters on behalf of a probation department. The legal

5. The defendant argues that the evidence did not warrant a finding of criminal contempt and that the complaint should be dismissed.[10]  We disagree.  The defendant's answer admitted the existence of an order to make payments and that that order was still in force on the date of complaint.  The evidence showed that the defendant had been working at a company in Burlington from September 4, 1975, to August 27, 1976, when he was discharged.  The record of payments made by the defendant to the probation office of the Probate Court during this period, amounting to five payments of $40 each, was properly admitted as a business record (G. L. c. 233, § 78) or as an official written statement.  See W.B. Leach & P.J. Liacos, Massachusetts Evidence 236, 242 (4th ed. 1967).  The defendant's payroll records which the probation department obtained under subpoena on August 23, 1976, were read into the record.  These records were admissible, over a hearsay objection, as business records.  G. L. c. 233, § 78.  The defendant raised no other objection to the admission of these payroll records.  Indeed, defense counsel appeared to accept the payroll records as correct and admissible.  Those records showed weekly net earnings always in excess of $100, and on two occasions, in the period from May 5, 1976, to August 25, 1976,

issues may be complicated, even though the presentations of the basic facts may be relatively simple, and the judge who must remain impartial can hardly be expected to correct deficiencies in the presentation of the prosecution's case.  Experience may indicate the need for a court order or rule requiring that all prosecutions of contempt initiated by a Probate Court probation department be presented by a member of the bar.  See *Blankenburg v. Commonwealth*, 260 Mass. 369, 378 n.* (1927); Connors, The Law of Contempt in Massachusetts: An Overview, 63 Mass. L. Rev. 161, 167 (1978); Dobbs, Contempt of Court: A Survey, 56 Cornell L. Rev. 183, 221 n.148 (1971).

We discuss subsequently the consequences of the absence of a prosecutor in this case and of the resulting dual role which the judge assumed.

[10] If the civil contempt aspect of the complaint survived the judge's order that the matter be treated as a criminal contempt, no jail sentence could have been imposed on the evidence presented because the defendant was not shown to have a then current ability to meet any portion of his unpaid support obligations.  See *Salvesen v. Salvesen*, 370 Mass. 608, 611 (1976); *Sodones v. Sodones*, 366 Mass. 121, 130 (1974).

net earnings exceeded $200. The defendant advanced no evidence, or even a suggestion, of mitigating circumstances during the period before he lost his job. He presented no witnesses and did not testify, and, of course, he had no duty to do so.

This was a criminal proceeding. The burden was on the prosecution to prove each element of the crime beyond a reasonable doubt and the defendant had no obligation to present any defense. See *School Comm. of New Bedford* v. *Dlouhy,* 360 Mass. 109, 116-117 (1971). The prosecution had to prove that there was a clear and unequivocal command and an equally clear, undoubted, and wilful disobedience of the order of the court. See *Shaw* v. *Commonwealth,* 354 Mass. 583, 586-587 (1968). There can be no doubt that the support order was clear and unequivocal and was in effect throughout the period considered by the judge. It is equally clear that the defendant knew of the order because he complied with it on five occasions. The record of the defendant's payments and his failure to pay warranted a finding that he had not fully complied with the order.

The only serious question is whether the evidence also warranted a finding that the defendant's failure to pay was a clear, undoubted, and wilful disobedience of the order. Nonpayment alone would not suffice. However, the evidence warranted a finding that in each week of nonpayment the defendant had net earnings at least twice as great as his weekly support obligation. In such a situation, where nothing else was presented on the question of the wilfulness of the defendant's conduct, the judge was warranted in inferring a wilful disobedience of the court's order and hence an intention to obstruct the court's administration of justice. The evidence supported a conclusion that the defendant purposefully ordered his priorities to place his support obligation behind his interest in applying his available funds elsewhere or in retaining them for himself. Any stricter standard of proof would make Probate and Family Court judges substantially helpless in punishing a disobedient defendant for his disregard of a court's order.[11]

---

[11] It appears to us that there should be a careful study of, and recommendations concerning, appropriate rules, procedures, and statutes gov-

6. We come finally to the defendant's argument which, as we have said, properly supports his contention that his conviction must be reversed. There was no prosecutor. The judge developed the evidence against the defendant by questions put to a probation officer of the Probate Court. Needless to say, defense counsel was put in an awkward position. See *United States* v. *Hill*, 332 F.2d 105, 106 (7th Cir. 1964). His objections to the admission of evidence were not likely to be considered with the judicial impartiality which should be exercised in the course of a trial. He pointed out his dilemma. It is true that the judge did not appear to act in an aggressive or vengeful fashion. He heard the defendant's objections, and there is no doubt that the defendant's appellate rights were properly preserved. However, the judge's active involvement in the presentation of the case against the defendant may have denied the defendant a fair trial. That involvement certainly gives the appearance that the defendant did not receive a fair trial. See *Commonwealth* v. *Howard*, 367 Mass. 569, 572 (1975). We reverse the conviction because of the apparent unfairness of the proceeding.

We note one further argument advanced by the defendant for the first time on appeal. The case was tried before the same judge who determined on June 28, 1977, that the case would be considered as a criminal contempt. We do not know all the circumstances of the hearing on June 28, 1977. We do know that the judge had considerable knowledge about this matter when the trial commenced. It appears from the transcript that he participated in certain pretrial discussions that defense counsel described as "negotiations in terms of trying to reach a settlement." Where the judge is the trier of fact, he must be most scrupulous both to avoid losing his impartiality and to maintain his unfamiliarity with disputed matters which may come before him and with extraneous matters which should not be known by

erning contempt proceedings for failure to make court-ordered support payments.

him. See S.J.C. Rule 3:25, Canon 3 (C) (1) (a), 359 Mass. 844 (1972). How far a judge's other pretrial contact with a matter may require his disqualification will depend on the circumstances of a given case. The fact that a judge entered an order whose violation is claimed is not alone a ground for the judge to recuse himself. See *Fay* v. *Commonwealth*, 379 Mass. 498, 505-506 (1980); *Katz* v. *Commonwealth*, 379 Mass. 305, 313 (1979). We noted that Mass. R. Crim. P. 44 (c), 378 Mass. 920, 921 (1979), provides that contempt charges should be heard by a judge other than the trial judge "whenever the nature of the alleged contemptuous conduct is such as is likely to affect the trial judge's impartiality."

7. The conviction of criminal contempt is reversed, and the case is remanded to the Probate and Family Court for further proceedings on the criminal contempt complaint in accordance with this opinion.

*So ordered.*