# SUPERADIO LIMITED PARTNERSHIP *VS.* WALT "BABY" LOVE PRODUCTIONS, INC.

No. 03-P-27.

Worcester. February 18, 2004. - November 29, 2004.

Present: ARMSTRONG, C.J., PERRETTA, & SMITH, JJ.

Further appellate review granted, 444 Mass. 1108 (2005).

*Arbitration,* Judicial review, Vacating award, Authority of arbitrator, Damages. *Uniform Arbitration Act.*

In an arbitration demanded by the plaintiff, the exclusive sales agent and distributor of a radio program produced by the defendant, for advertising revenues due under a radio network agreement (agreement), the arbitration panel exceeded its authority in imposing monetary sanctions on the plaintiff for violations of discovery orders, where the award of sanctions was a dispute that arose from the conduct of the arbitration itself rather than a dispute arising under the agreement, and therefore, the agreement's arbitration clause did not authorize the imposition of such sanctions; moreover, neither the Commercial Arbitration Rules of the American Arbitration Association nor the Uniform Arbitration Act, G. L. c. 251, authorized the imposition of monetary sanctions for violations of discovery orders. [549-552]

CIVIL ACTION commenced in the Superior Court Department on August 24, 2001.

The case was heard by *Francis R. Fecteau,* J.

*John O. Mirick* (*Julie A. Hamon* with him) for the plaintiff.

*John D. Geelan,* of New York (*Michelle M. Hansen* with him) for the defendant.

SMITH, J. In May of 1995, Superadio Limited Partnership (Superadio) entered into a radio network agreement (agreement) with Walt "Baby" Love Productions, Inc. (Baby Love). Under that agreement, Superadio became the exclusive advertising sales agent for a radio program produced by Baby Love and distributed by Superadio. The agreement provided that revenues collected from the sale of advertisements aired on the radio

program would be divided between Superadio and Baby Love. The agreement also required that the parties arbitrate any disputes arising from the agreement before a panel of the American Arbitration Association (AAA) and that the ensuing arbitration be conducted pursuant to the AAA's rules. The agreement terminated on December 31, 1998.

On or about March 29, 1999, Superadio filed a demand for arbitration, claiming that Baby Love had withheld approximately $150,000 in revenue from advertisements sold by Superadio. The advertisements had been booked by Superadio during the agreement, but had aired after the termination of the agreement.

Baby Love answered Superadio's demand and asserted counterclaims claiming that Superadio violated the agreement by refusing to turn over advertising revenue that Superadio had collected on Baby Love's behalf. Superadio did not deny that Baby Love was entitled to about $75,000 of those revenues, but claimed that it was entitled to hold those funds as a "set-off" against revenues that it might prove at the arbitration hearing.

The parties selected a panel of three arbitrators. Baby Love argued that Superadio had no right of set-off. The arbitration panel agreed. On February 7, 2000, the panel ordered Superadio to pay Baby Love the withheld funds. Superadio made the payments.

The parties then attempted to engage in discovery for the hearing on the remaining claims and counterclaims. However, although Baby Love made repeated, specific requests for the production of certain documents, Superadio did not respond to those requests.

As a result of Superadio's failure to respond to Baby Love's requests, on August 21, 2000, the arbitration panel entered an order directing Superadio to comply with the requests by September 22, 2000, or it would have to pay a fine of "$1,000 per day until Superadio is either in compliance or until the date of the hearing whichever shall occur first." The parties were also told that the failure of either party to produce requested documents would result in the unproduced evidence not being allowed in evidence at the hearing.

On or about September 28, 2000, Superadio withdrew its demand for arbitration. Baby Love, however, proceeded with its

counterclaims and again repeated its demands for Superadio to produce responsive documents and witnesses. Superadio again failed to comply with the requests.

After several continuances, which were requested by Baby Love, the hearing on Baby Love's counterclaims commenced on June 20, 2001. At that time, Superadio still had not complied with Baby Love's requests for discovery. During the hearing, Superadio admitted that it possessed the documents requested by Baby Love and, in fact, attempted to introduce them in evidence. The documents were not allowed in evidence by the arbitration panel because of its previous order that any requested documents that were not produced would not be admitted in evidence.

On July 23, 2001, the arbitration panel entered its award. The panel determined that Baby Love presented sufficient documentary evidence and witness testimony to support its claim that Superadio had indeed underreported the amount of advertising revenue owed to Baby Love. The arbitration panel determined, however, as to the issue of damages that "Superadio's refusal to produce requested documents despite orders and monetary sanctions from the Panel, prevented [Baby] Love from proving its damages with the minimum threshold precision necessary for an award on its breach of contract theory." Because of the failure of Superadio to produce the discovery material, the arbitration panel ruled that it had been "hampered in its ability to determine precise contract damages." Consequently, the panel decided to resolve the outstanding disputes between the parties through an award of discovery sanctions against Superadio.

The arbitration panel then revisited its discovery order and noted that 271 days had elapsed between the date of that order and the start of the hearing. At the time of the order, the penalty set by the panel for noncompliance was $1,000 a day. Therefore, the arbitration panel imposed monetary sanctions on Superadio, in the form of an award, in the amount of $271,000 against Superadio.

On August 21, 2001, Superadio filed a complaint in the Superior Court seeking to vacate the award. Baby Love filed an answer requesting the judge to confirm the award. On April 5, 2002, the judge allowed Baby Love's motion and confirmed the

award. Judgment entered in favor of Baby Love on August 30, 2002. Superadio then filed a timely appeal.

On appeal, Superadio claims that the arbitration panel exceeded its powers when it imposed monetary sanctions in the form of an award. Superadio also argues that the award was obtained by undue means because Baby Love's attorney, who had been admitted to practice law in New York and not Massachusetts, engaged in an unauthorized practice of law during the arbitration proceedings.

1. *Standard of review.* Under G. L. c. 150C, § 11, "A matter submitted to arbitration is subject to a very narrow scope of review. Absent fraud, errors of law or fact are not sufficient grounds to set aside an award." *Lynn* v. *Thompson,* 435 Mass. 54, 61 (2001), quoting from *Plymouth-Carver Regional Sch. Dist.* v. *J. Farmer & Co.,* 407 Mass. 1006, 1007 (1990). "The policy of limited judicial review is reflective of the strong public policy favoring arbitration as an expeditious alternative to litigation for settling commercial disputes." *Plymouth-Carver Regional Sch. Dist.* v. *J. Farmer & Co., supra.*

There are a few exceptions, however, to the general rule. Those exceptions, which are contained in G. L. c. 150C, § 11, include the admonition that "[u]pon application of a party, the superior court shall vacate an award if . . . (3) the arbitrators exceeded their powers." As defined by our cases, "[a]n arbitrator exceeds his powers if the parties to the agreement never gave the arbitrator the power to make the award he made." *Leominster* v. *International Bhd. of Police Officers,* 33 Mass. App. Ct. 121, 124 (1992). See *Morceau* v. *Gould-National Batteries, Inc.,* 344 Mass. 120, 124 (1962).

Superadio argues that the arbitration panel exceeded its authority by imposing monetary sanctions because there is no such authority granted to the panel in the parties' agreement to submit the dispute for arbitration, the AAA rules, or in the Uniform Arbitration Act for Commercial Disputes, as adopted by Massachusetts. See G. L. c. 251.

2. *Analysis.* a. *The arbitration clause.* Baby Love claims that the arbitration clause in the agreement gave the arbitration panel the authority to assess monetary sanctions in the form of an award. See *Drywall Sys., Inc.,* v. *ZVI Constr. Co.,* 435 Mass.

664, 669-671 (2002).[1] In *Drywall*, the parties agreed to submit to arbitration "any controversy or claim . . . arising out of or related to this subcontract." *Id.* at 665. Disputes arose between the parties, and after a hearing, the arbitration panel entered an award against the defendant which included, among other things, multiple damages pursuant to G. L. c. 93A, § 11. *Id.* at 666. On appeal, the Supreme Judicial Court upheld the award, ruling that the arbitration clause was sufficiently broad to allow for multiple damages although the allowance of such damages was not specifically authorized by the arbitration clause. *Ibid.* The court noted that neither G. L. c. 93A, § 11, nor G. L. c. 251, § 10,[2] prohibited an arbitral award of multiple damages. *Id.* at 669.

In the case before us, the arbitration clause states that the parties agree to arbitrate "[a]ny dispute arising under the [a]greement." The award of monetary sanctions for violations of discovery orders was not, however, a dispute that arose under the agreement. Rather it was a dispute that arose from the conduct of the arbitration itself. Accordingly, the arbitration clause in the agreement did not authorize the arbitration panel to impose monetary sanctions in the form of an award for violation of discovery orders.

b. *The AAA rules.* The agreement also states that any dispute arising under it would be resolved by AAA rules. Rule 23 of the Commercial Arbitration Rules of the AAA states as follows:

"(a) At the request of any party or at the discretion of the arbitrator, consistent with the expedited nature of arbitra-

---

[1] Baby Love also claims that *Softkey, Inc.* v. *Useful Software, Inc.*, 52 Mass. App. Ct. 837, 840-841 (2001), supports the award of monetary sanctions. In *Softkey*, the arbitration agreement specifically included a provision for the award of attorney's fees "in proportion to [the parties'] respective amounts of liability so determined." *Id.* at 838. In determining the amount of attorney's fees, the arbitrator took in consideration "[Softkey's] stonewalling [during] discovery." *Ibid.* On appeal, the court ruled that because the parties specifically agreed to the award of attorney's fees "in proportion to their respective amounts of liability [so determined]," the arbitrator had the authority to consider and reflect in his award "the degree to which the parties participated constructively in the arbitration process." *Id.* at 840. *Softkey* does not apply to this matter because the parties in that case never specifically agreed to allow the arbitration panel to impose monetary sanctions.

[2] General Laws c. 251, § 10, refers to certain fees and expenses that should be included in the award unless otherwise provided by the agreement to arbitrate. See part 2(c), *infra*.

tion, the arbitrator may direct (i) the production of documents and other information, and (ii) the identification of any witnesses to be called.

"(b) At least five (5) business days prior to the hearing, the parties shall exchange copies of all exhibits they intend to submit at the hearing.

"(c) The arbitrator is authorized to resolve any disputes concerning the exchange of information."

Although rule 23 is silent about the arbitrators' authority to enforce their discovery orders by imposing monetary sanctions, Baby Love points to rule 45(a) of the AAA rules, which states that "[t]he arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties." According to Baby Love, rules 23 and 45, when read together, gave the panel the authority to impose monetary sanctions on Superadio for its refusal to comply with Baby Love's discovery requests. We disagree, noting that rule 45(a) does not mention monetary sanctions and should not be construed as to sweep in matters *not* contemplated by the agreement, i.e., to include matters beyond the issue submitted to arbitration.

c. *The Uniform Arbitration Act.* In 1960, Massachusetts adopted the Uniform Arbitration Act (UAA), G. L. c. 251, with certain modifications. Because discovery under the UAA was limited only to subpoenas and depositions, and did not, for example, include the production of documents, Massachusetts added a provision, G. L. c. 251, § 7(*e*),[3] permitting a party to serve on another party a request for discovery in accordance with Mass.R.Civ.P. 34(a), 365 Mass. 792 (1974), and Mass.R.Civ.P. 26(b), 365 Mass. 772 (1974). See *Hull Mun. Lighting Plant* v. *Massachusetts Mun. Wholesale Elec. Co.*, 414 Mass. 609, 616

---

[3]General Laws c. 251, § 7(*e*), inserted by St. 1960, c. 74, § 1, states in pertinent part as follows:

"(e) Any party in an arbitration proceeding may serve upon any other party a request for the production of documents and things . . . . The enforcement and objections of such request shall be made to the arbitrators and the arbitrators only shall issue such orders as they deem necessary on objections and in requests for enforcement of production both prior to and after the commencement of the hearings."

(1993). Under the statute, enforcement and objections to discovery requests are made to the arbitrator, who may issue orders as deemed necessary. G. L. c. 251, § 7(e). If discovery requests are not complied with, the arbitrator may issue a subpoena for the production of the documents. G. L. c. 251, § 7(a).[4] *Hull Mun. Lighting Plant* v. *Massachusetts Mun. Wholesale Elec. Co., supra.* If the party still refuses to comply, the party requesting the documents or the arbitrator may make an application to the court for the enforcement of the subpoena. G. L. c. 251, § 7(a). Note 4, *supra. Hull Mun. Lighting Plant* v. *Massachusetts Mun. Wholesale Elec. Co., supra.* "Service and enforcement of subpoenas are [then] governed by [Mass.R.Civ.P. 45(b), 365 Mass. 809 (1974).]" *Ibid.*

There is, therefore, no authority in G. L. c. 251 allowing arbitrators to impose monetary sanctions for violations of discovery orders. Rather, it appears to us that it was the intent of the Legislature to leave that drastic sanction to the courts.

3. *Conclusion.* It is clear that arbitrators have the power to enforce discovery orders by imposing some sanctions, such as not allowing the withheld documents in evidence. Our decision holds only that unless the parties agree to the imposition of monetary sanctions for violation of discovery orders, arbitrators do not have the authority to impose monetary sanctions for such violations.

So much of the judgment confirming the arbitrator's award imposing sanctions in the amount of $271,000 is reversed and that portion of the arbitrator's award is vacated.[5]

*So ordered.*

---

[4]General Laws c. 251, § 7(a), inserted by St. 1960, c. 274, § 1, states as follows:

"(a) The arbitrators may cause to be issued subpoenas for the attendance of witnesses and for the production of books, records, documents and other evidence, and shall have the power to administer oaths. Subpoenas so issued shall be served, and upon application to the court by a party or the arbitrators, enforced, in the manner provided by law for the service and enforcement of subpoenas in a civil action."

[5]The issue raised by Superadio concerning Baby Love's representation at the arbitration proceedings by out-of-State counsel is without merit. Nothing in Massachusetts law requires that a party's representative in arbitration proceedings be admitted to practice in Massachusetts.