SUPERADIO LIMITED PARTNERSHIP *vs.* WINSTAR RADIO
PRODUCTIONS, LLC.[1]

Worcester. January 3, 2006. - March 28, 2006.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Arbitration,* Judicial review, Award, Authority of arbitrator. *Unauthorized Practice of Law.*

Discussion of the scope of review to which an arbitration award is subject. [333-334]

This court declined to decide whether an out-of-State attorney's representation of a party at a Massachusetts arbitration proceeding constituted the unauthorized practice of law, where even assuming that the representation might constitute the unauthorized practice of law, the conduct would not provide a basis to vacate the award, because absent fraud, corruption, or other undue means under G. L. c. 251, § 12 (*a*) (1), errors of law or fact did not constitute sufficient grounds to set aside the award. [334-337] SPINA, J., concurring, with whom COWIN, J., joined.

This court concluded that an arbitration panel did not exceed its authority in awarding monetary damages as a sanction for the plaintiff's discovery violations, where the parties' agreement contained a broad arbitration provision containing no limitation on the panel's authority to fashion relief, and where the governing rules of arbitration provided arbitrators with broad authority to fashion remedies during arbitration proceedings and to oversee discovery. [337-340] SPINA, J., dissenting, with whom COWIN, J., joined.

CIVIL ACTION commenced in the Superior Court Department on August 24, 2001.

The case was heard by *Francis R. Fecteau,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*John O. Mirick* (*Jessica H. Munyon* with him) for the plaintiff.

*John D. Geelan,* of New York (*Michelle M. Hansen* with him) for the defendant.

---

[1]Winstar Radio Productions, LLC, is the successor in interest to the corporation involved in the underlying dispute, Walt "Baby" Love Productions, Inc. We collectively refer to these entities as Baby Love.

The following submitted briefs for amici curiae:

*Timothy P. Burke, Matthew C. Applebaum, Katherine W. Grearson, Richard A. Johnston, Mark C. Fleming, & James S. Goldman* for Boston Bar Association.

*Timothy P. Burke & Matthew C. Applebaum* for Securities Industry Association.

*Andrew R. Grainger, Martin J. Newhouse, & Ben Robbins* for New England Legal Foundation.

GREANEY, J. We granted further appellate review to decide whether the arbitration award in this case should be vacated. The losing party in the arbitration, Superadio Limited Partnership (Superadio), seeks that relief on two grounds: (1) that the attorney representing Walt "Baby" Love Productions, Inc. (Baby Love), who was licensed to practice law in New York, but not in Massachusetts, engaged in the unauthorized practice of law by representing Baby Love at the arbitration proceeding here; and (2) that the arbitration panel lacked authority to impose monetary sanctions for Superadio's violation of a discovery order. We affirm the judgment confirming the award.

The background of the case is as follows. In May, 1995, Superadio and Baby Love entered a radio network agreement (agreement) wherein Superadio became the exclusive advertising sales agent for an existing radio program and a proposed new radio program produced by Baby Love. Under the agreement, the net revenues collected from the sale of advertising airing on the radio programs were to be divided equally between Superadio and Baby Love. The agreement provided that it "shall be interpreted" under Massachusetts law and that "[a]ny dispute arising under the [a]greement, including but not limited to any dispute concerning payments due, shall be arbitrated under the rules of the American Arbitration Association [AAA] before a panel of the [AAA] sitting in Boston, Massachusetts." After an extension, the agreement terminated on December 31, 1998.

A few months later, Superadio filed a demand for arbitration, alleging that Baby Love had withheld approximately $150,000 in advertising revenues that should have been shared with Superadio. The disputed revenue allegedly derived from advertisements that had been booked by Superadio during the term of the agreement, but had not aired until after the agree-

ment had terminated. Baby Love filed an answer and a counterclaim asserting that Superadio had violated the agreement by refusing to turn over advertising revenues that Superadio had collected on Baby Love's behalf for advertisements that had aired before the agreement terminated. Baby Love sought $841,239 in damages. Superadio agreed that Baby Love was entitled to approximately $75,000 of those revenues, but held the money to offset the amount which Superadio claimed it was owed.

The parties selected a panel of three arbitrators (panel). By agreement of the parties, the Commercial Arbitration Rules of the AAA (AAA rules), would govern the proceeding. The panel entered a partial summary judgment award, finding that Superadio had no right to offset, and ordering Superadio to pay the withheld amount to Baby Love.

The parties proceeded with discovery on the remaining claims to be arbitrated. Baby Love claimed that Superadio was not complying with its discovery requests and sought intervention from the panel. On August 21, 2000, the panel entered an order directing Superadio either to satisfy certain discovery requests "by September 22, 2000," or to pay Baby Love "$1,000 per day until Superadio is either in compliance or until the date of the [h]earing, whichever shall occur first." The parties were notified that the failure to produce discovery would result in the exclusion of such discovery as evidence at the arbitration hearing. Superadio did not comply with the discovery order and, on September 28, 2000, withdrew its demand for arbitration. Baby Love proceeded to arbitrate its counterclaim.

At some point in the proceedings, Superadio objected to the appearance of Baby Love's attorney, an attorney licensed to practice law in New York, but not in Massachusetts, contending that the attorney was engaged in the unauthorized practice of law. The attorney had not sought admission pro hac vice in Massachusetts, and Baby Love had not retained local counsel.

The panel conducted a hearing on the case in June, 2001, and did not permit either party to introduce documents or witnesses that it had not produced in response to a reasonable discovery request. On July 23, 2001, the panel entered its award. The panel concluded that Baby Love had supported its claim that

Superadio had underreported the amount of advertising revenues owed. The panel, however, could not enter an award for contract damages because of Baby Love's inability to prove its damages, an inability attributable to Superadio's failure in discovery to produce documents relevant to the damages issue. The panel concluded that, under Rule 23 (c) of the AAA rules (which we shall set forth later in this opinion), it had the authority to impose a sanction on Superadio for violating the panel's August 21, 2000, discovery order, and imposed a sanction in the amount of $271,000. The amount represented an assessment of $1,000 per day from September 23, 2000 (the day following the deadline for discovery compliance), to June 20, 2001 (the day that the arbitration hearing commenced). The panel noted that Superadio could have tolled the accrual of sanctions by producing the ordered discovery, which Superadio admitted was in its possession. The panel added to its award certain costs and prejudgment interest, amounts not in dispute, for a total award of $287,566.83. In addition, the panel noted that Superadio, by filing its demand for arbitration, had agreed to abide by the AAA rules, which permit nonlawyers to represent parties at an arbitration proceeding. In view of the applicable AAA rules, the panel rejected Superadio's argument that the representation of Baby Love by a licensed out-of-State attorney constituted the unauthorized practice of law.

Superadio filed a complaint in the Superior Court seeking to vacate the arbitration award. Baby Love filed an answer and a counterclaim requesting confirmation of the award. A Superior Court judge allowed Baby Love's motion and entered a judgment confirming the award. Superadio appealed, and the Appeals Court reversed, vacating that portion of the arbitration award that imposed sanctions ($271,000) on Superadio for its discovery violations. *Superadio Ltd. Partnership* v. *Walt "Baby" Love Prods., Inc.*, 62 Mass. App. Ct. 546, 552 (2004). We granted Baby Love's application for further appellate review.

1. Consistent with policy strongly favoring arbitration, see *Massachusetts Highway Dep't* v. *Perini Corp.*, 444 Mass. 366, 374 (2005), an arbitration award is subject to a narrow scope of review. *School Comm. of Hanover* v. *Hanover Teachers Ass'n*, 435 Mass. 736, 740 (2002). The bases for review are set forth

in G. L. c. 251, § 12. Judicial intervention is permitted where an award "was procured by corruption, fraud or other undue means," § 12 (*a*) (1), or where the "arbitrators exceeded their powers," § 12 (*a*) (3). "An arbitrator exceeds his authority by granting relief beyond the scope of the arbitration agreement . . . by awarding relief beyond that to which the parties bound themselves . . . or by awarding relief prohibited by law" (citations omitted). *Plymouth-Carver Regional Sch. Dist.* v. *J. Farmer & Co.*, 407 Mass. 1006, 1007 (1990). "Arbitration, it is clear, may not 'award relief of a nature which offends public policy or which directs or requires a result contrary to express statutory provision' . . . or otherwise transcends the limits of the contract of which the agreement to arbitrate is but a part." *Id.*, quoting *Lawrence* v. *Falzarano*, 380 Mass. 18, 28 (1980).

2. We first take up Superadio's argument that the arbitration award was procured by undue means, see G. L. c. 251, § 12 (*a*) (1), because Baby Love's attorney, a New York attorney not licensed to practice law in Massachusetts, engaged in the unauthorized practice of law by representing Baby Love in the arbitration. As a general proposition, an attorney practicing law in Massachusetts must be licensed, or authorized, to practice law here. Whether representation of a party by an out-of-State licensed attorney at a Massachusetts arbitration proceeding constitutes the practice of law, is an issue of first impression.

Under the Massachusetts Rules of Professional Conduct, which became effective on January 1, 1998, well before the arbitration proceedings in this case had commenced, a lawyer "shall not . . . practice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction." Mass. R. Prof. C. 5.5, 426 Mass. 1410 (1998). This rule is supplemented by G. L. c. 221, § 46A, which provides:

> "No individual, other than a member, in good standing, of the bar of this commonwealth shall practice law, or, by word, sign, letter, advertisement or otherwise, hold himself out as authorized, entitled, competent, qualified or able to practice law; provided, that a member of the bar, in good standing, of any other [S]tate may appear, by permission of the court, as attorney or counselor, in any case pending

therein, if such other [S]tate grants like privileges to members of the bar, in good standing, of this commonwealth."

See *DiLuzio* v. *United Elec., Radio & Mach. Workers, Local 274*, 391 Mass. 211, 214-215 (1984) (as constitutional matter, Legislature cannot give permission to practice law, but may enact laws in "aid of the judicial prerogative"); *Lowell Bar Ass'n* v. *Loeb*, 315 Mass. 176, 179 (1943) (explaining that statutes "may aid by providing machinery and criminal penalties, but may not extend the privilege of practising law to persons not admitted to practice by the judicial department"). Neither the rule nor the statute, however, defines what constitutes the practice of law. While "[t]he judicial department is necessarily the sole arbiter of what constitutes the practice of law," *id.* at 180, the task of doing so is not easy and, in most cases, will depend on the facts of each case. See *Matter of Chimko*, 444 Mass. 743, 749 (2005).

The parallel rule of the American Bar Association (ABA) Model Rules of Professional Conduct (2003) now expressly permits multijurisdictional practice in arbitration. Specifically, ABA Model Rule 5.5 (c) (3) provides:

"(c) A lawyer admitted in another United States jurisdiction, and not disbarred or suspended from practice in any jurisdiction, may provide legal services on a temporary basis in this jurisdiction that:

". . .

"(3) are in or reasonably related to a pending or potential arbitration, mediation, or other alternative dispute resolution proceeding in this or another jurisdiction, if the services arise out of or are reasonably related to the lawyer's practice in a jurisdiction in which the lawyer is admitted to practice and are not services for which the forum requires pro hac vice admission . . . ."[2]

Adoption of this rule is currently under consideration in Mas-

---

[2] Comment [12] to Rule 5.5 of the American Bar Association (ABA) Model Rules of Professional Conduct (2003) provides: "The lawyer, however, must obtain admission pro hac vice in the case of a court-annexed arbitration or mediation or otherwise if court rules or law so require."

sachusetts by the standing advisory committee on the Massachusetts Rules of Professional Conduct. Many States have adopted a rule of professional conduct similar or identical to ABA Model Rule 5.5 (c) (3).[3] We note also that, while the Restatement (Third) of the Law Governing Lawyers § 3 (2000), does not expressly address arbitration, it generally permits an out-of-State attorney to "provide legal services" in another jurisdiction to a client so long as the matter is reasonably related to the attorney's home-State practice.[4]

We need not decide in this case whether an out-of-State attorney's representation of a party at a Massachusetts arbitration proceeding constitutes the unauthorized practice of law. In view of the current study of ABA Model Rule 5.5 (c) (3), by our standing advisory committee, prudence dictates that this question await the committee's report and our action thereon. We conclude that, even assuming that the representation might constitute the unauthorized practice of law, the conduct would not provide a basis to vacate the award. "Absent fraud, [corrup-

---

[3]While the matter is generally governed by rule, a few courts have decided the issue. See *Williamson* v. *John D. Quinn Constr. Corp.*, 537 F. Supp. 613, 616 (S.D.N.Y. 1982) (rejecting claim that out-of-State attorney and firm were foreclosed from recovery obtained in connection with services rendered in arbitration proceeding because not authorized to practice law in that State); *Colmar, Ltd.* v. *Fremantlemedia N. Am., Inc.*, 344 Ill. App. 3d 977, 989 (2003) (concluding that out-of-State attorney's representation of client during arbitration proceeding did not constitute unauthorized practice of law). But cf. *Matter of Creasy*, 198 Ariz. 539, 541-544 (2000) (concluding that disbarred attorney violated order of disbarment because engaged in practice of law by representing party at private arbitration proceeding). Since the *Creasy* opinion, ABA Model Rule 5.5 (c) (3) has been adopted in Arizona. See Ariz. R. Prof. C. 5.5 (c) (3) (2005). Out-of-State attorneys engaging in arbitration proceedings in Arizona, however, must inform their clients that they are not admitted to practice in Arizona, and "must obtain the client's informed consent to such representation." Ariz. R. Prof. C. 5.5 (e). We note that Superadio's reliance on *Birbrower, Montalbano, Condon & Frank, P.C.* v. *Superior Court,* 17 Cal. 4th 119, cert. denied sub nom. *Birbrower, Montalbano, Condon & Frank, P.C.* v. *ESQ Business Servs., Inc.,* 525 U.S. 920 (1998), is misplaced. In that case, it was determined that the out-of-State attorneys had engaged in the unauthorized practice of law, but "none of the time that the New York attorneys spent in California was spent in arbitration." *Id.* at 133.

[4]Section 3 of the Restatement (Third) of the Law Governing Lawyers (2000), provides: "A lawyer currently admitted to practice in a jurisdiction may provide legal services to a client . . . at a place within a jurisdiction in which the lawyer is not admitted to the extent that the lawyer's activities arise out of or are otherwise reasonably related to the lawyers's practice . . . . ."

tion, or other undue means under G. L. c. 251, § 12 (*a*) (1),] errors of law or fact are not sufficient grounds to set aside an award." *Lynn* v. *Thompson*, 435 Mass. 54, 61 (2001), cert. denied, 534 U.S. 1131 (2002), quoting *Plymouth-Carver Regional Sch. Dist.* v. *J. Farmer & Co., supra.* Nothing Superadio has argued persuades us that either Baby Love or its New York attorney procured the award through "undue means," that is, in an underhanded, conniving, or unlawful manner similar to corruption or fraud as those terms are used in arbitration law and practice. See *National Cas. Co.* v. *First State Ins. Group,* 430 F.3d 492, 499 (1st Cir. 2005), and cases cited.[5]

3. Superadio also contends that the arbitration panel exceeded its authority in awarding monetary damages for Superadio's discovery violations. Superadio maintains, and the Appeals Court agreed, that because neither the parties' agreement nor the AAA rules expressly authorize a monetary sanction for discovery violations, the panel was not authorized to impose that sanction. *Superadio Ltd. Partnership* v. *Walt "Baby" Love Prods., Inc.*, 62 Mass. App. Ct. 546, 551 (2004). We reject the argument.

The panel's authority derives from the parties' agreement, which contains a broad arbitration provision, and from the AAA rules, which the agreement incorporates and which have a broad remedial provision. The arbitration agreement provides that "[a]ny dispute arising under the [a]greement, including but not limited to any dispute concerning payments due, shall be arbitrated under the rules of the [AAA]." This provision is all-encompassing and contains no limitation on the panel's authority to fashion relief. In concluding that the dispute resulting in the challenged sanction did not arise from the agreement, but from the conduct of the arbitration, see *Superadio Ltd. Partnership* v. *Walt "Baby" Love Prods., Inc., supra* at 550, the Appeals Court failed to follow strictly the strong presumption of arbitrability, see *Drywall Sys., Inc.* v. *ZVI Constr. Co.*, 435 Mass. 664, 666 (2002). In so doing, the Appeals Court over-

---

[5]Superadio does not argue that the term "undue means" under G. L. c. 251, § 12 (a) (1), encompasses conduct different from what that term has been construed to contemplate under the Federal Arbitration Act.

looked the essence of the dispute — Superadio's conduct of withholding materials that established Baby Love's damages, namely, the amount of money owed because of Superadio's alleged violation of the agreement. Such a matter, damages owed for breach of the agreement, related to the core of the agreement. As such, the dispute was one encompassed by the terms of the agreement.

Further, the AAA rules provide arbitrators with broad authority to fashion remedies during arbitration proceedings and to oversee discovery. Rule 45 (a) provides:

> "The arbitrator may grant *any remedy or relief that the arbitrator deems just and equitable* and within the scope of the agreement of the parties, including, but not limited to, specific performance of a contract" (emphasis added).

Rule 23 provides:

> "(a) At the request of any party or at the discretion of the arbitrator, consistent with the expedited nature of arbitration, the arbitrator may direct (i) the production of documents and other information, and (ii) the identification of any witnesses to be called.
>
> "(b) At least five (5) business days prior to the hearing, the parties shall exchange copies of all exhibits they intend to submit at the hearing.
>
> "(c) *The arbitrator is authorized to resolve any disputes concerning the exchange of information*" (emphasis added).

Noteworthy in these rules is the absence of any language limiting the means by which an arbitrator or arbitration panel may resolve discovery disputes, or language restricting the application of the broad remedial relief of rule 45 (a) to final awards (and precluding the grant of broad remedial relief to interim awards). The rules, construed together, and supported by the broad arbitration provision in the agreement and the absence of any limiting language prohibiting a monetary sanction for discovery violations, authorized the panel to resolve discovery

dispute by imposing monetary sanctions.[6] See *Drywall Sys., Inc.* v. *ZVI Constr. Co.*, *supra* at 667; *Softkey, Inc.* v. *Useful Software, Inc.*, 52 Mass. App. Ct. 837, 840 (2001); *Kraft Foods, Inc.* v. *Office & Professional Employees Int'l Union, Local 1295*, 203 F.3d 98, 102 (1st Cir. 2000).[7] See generally *Advanced Micro Devices, Inc.* v. *Intel Corp.*, 9 Cal. 4th 362, 367, 376 (1994) (upholding arbitrator's award and stating: "The principle of arbitral finality [and] the practical demands of deciding on an appropriate remedy for breach . . . dictate that arbitrators, unless expressly restricted by the agreement or the submission to arbitration, have substantial discretion to determine the scope of their contractual authority to fashion remedies, and that judicial review of their awards must be correspondingly narrow and deferential"). To give arbitrators control over discovery and discovery disputes without the authority to impose monetary sanctions for discovery violations and noncompliance with appropriate discovery orders, would impede the arbitrators' ability to adjudicate claims effectively in the manner contemplated by the arbitration process.

Because the panel entered its award based on its interpretation of the AAA rules, particularly, rule 23 (c), in the absence of fraud (which is not alleged), Superadio is bound by the panel's interpretation of the arbitration rules. See *Bernard* v. *Hemisphere Hotel Mgt., Inc.*, 16 Mass. App. Ct. 261, 263-264 (1983), and cases cited. Finally, we reject Superadio's argument that the

[6]Superadio inappropriately relies on *MCR of Am., Inc.* v. *Greene*, 148 Md. App. 91 (2002). That case concerned an issue, whether an arbitrator had the authority to sanction a party's attorney for misconduct, that is not involved here. *Id.* at 112. Superadio's reliance on *Baxter Health Care, Corp.* v. *Harvard Apparatus, Inc.*, 35 Mass. App. Ct. 204 (1993), is also misplaced. That case concerned an award of attorney's fees that was expressly prohibited by statute. *Id.* at 208.

[7]We acknowledge the existence of contrary authority, noting that the issue "has seldom been explored by the courts," O'Neill, The Power of Arbitrators to Award Monetary Sanctions for Discovery Abuse, 60 Disp. Resol. J. 60, 63 (Jan. 2006), and that each decision likely will depend on the particular language in the parties' respective arbitration agreements. See, e.g., *Certain Underwriters at Lloyd's, London* v. *Argonaut Ins. Co.*, 264 F. Supp. 2d 926, 943-945 (N.D. Cal. 2003) (noting "no categorical ban to an arbitrator's imposition of sanctions for non-compliance with his or her orders," but concluding that panel exceeded authority imposing sanction because neither Federal Arbitration Act nor parties' arbitration contract contained basis for sanction imposed).

absence of an express provision in G. L. c. 251, the Uniform Arbitration Act for Commercial Disputes, providing an award of sanctions for discovery violations, evidences an intent by the Legislature to prohibit such a sanction.[8] The proper inquiry is whether the sanction is prohibited by statute. See *Plymouth-Carver Regional Sch. Dist.* v. *J. Farmer & Co.*, 407 Mass. 1006, 1007 (1990). The Legislature has chosen not to curtail an arbitrator's comprehensive and flexible remedial powers so long as those powers derive from the agreement. Cf. *Softkey, Inc.* v. *Useful Software, Inc.*, *supra* at 837 (award of attorney's fees in arbitration proceedings prohibited by statute unless provided in arbitration agreement). The award here, based as it is on the monetary assessment imposed for Superadio's violation of discovery, gives Baby Love a measure of relief in damages that would otherwise have been impermissibly denied because of Superadio's intransigence, hardly an "injustice" as touted by the dissent. *Post* at 343.

*Judgment affirmed.*

SPINA, J. (concurring in part and dissenting in part, with whom Cowin, J., joins). I agree with that portion of the court's opinion concerning the practice of law, but I respectfully dissent from that part of the opinion that affirms the award of a monetary sanction for discovery violations.

The court bases its holding on "the broad arbitration provision in the agreement and the absence of any limiting language prohibiting a monetary sanction for discovery violations." *Ante* at 338. Arbitrators probably have authority under the arbitration agreement to impose a wide range of sanctions against a party who disobeys an order for discovery, including but not limited to refusing to allow the disobedient party to support or oppose corresponding claims or defenses, prohibiting the disobedient party from introducing certain matters in evidence, and taking

---

[8]Justice Spina essentially makes the same argument, with the twist that the authority to impose monetary sanctions lies solely with a court and arises from the power of contempt. *Post* at 341. While a court certainly does possess such authority, such authority does not arise solely from the power of contempt, but rather may also arise from an agreement, as pointed out in the above text.

certain facts as established in accordance with the claim of the party obtaining the discovery order. However, the power to enforce a discovery order is limited under G. L. c. 251, § 7 (*e*), to application to a judge for enforcement of a subpoena.

General Laws c. 251, § 7 (*e*), gives to arbitrators the authority to "issue such orders as they deem necessary . . . on requests for enforcement of production both prior to and after the commencement of the hearing." We have said that when discovery requests are not complied with, the proper enforcement procedure is for the arbitrator to issue a subpoena pursuant to G. L. c. 251, § 7 (*a*), and if the party or witness persists in its refusal to comply, the arbitrator or the party seeking enforcement of the discovery order may make application to a judge for enforcement of the subpoena. Thereafter "the decision to enforce or to quash the subpoena[] is a matter within the . . . discretion" of a trial court judge. *Hull Mun. Lighting Plant* v. *Massachusetts Mun. Wholesale Elec. Co.*, 414 Mass. 609, 617 (1993). That is the only enforcement mechanism available under the statute. If the Legislature had intended to grant additional powers, it would have done so. An arbitral power to impose a monetary fine for disobeying a discovery order is inconsistent with G. L. c. 251, § 7.

This conclusion is consistent with the nature of the power to impose monetary sanctions for disobedience of a discovery order. The power is extraordinary, and it arises from the power of contempt. See, e.g., *Imprescia* v. *Imprescia*, 392 Mass. 101, 106 (1984); *Ayash* v. *Dana Farber Cancer Inst.*, 46 Mass. App. Ct. 384 (1999). See also Mass. R. Civ. P. 37 (b) (2) (D), as appearing in 390 Mass. 1208 (1984). The power of contempt is a "power inherent in all courts to enforce obedience, something they must possess in order properly to perform their functions." *Root* v. *MacDonald*, 260 Mass. 344, 355 (1927), quoting *Myers* v. *United States*, 264 U.S. 95, 103 (1924). This court has noted that the power of contempt is one of the distinguishing features between courts and arbitrators. "[W]hile it is sparingly to be used . . . the power of courts to punish for contempts is a necessary and integral part of the independence of the judiciary, and is absolutely essential to the performance of the duties imposed on them by law. Without it they are mere boards of

arbitration whose judgments and decrees would be only advisory." *Root* v. *MacDonald, supra* at 360, quoting *Gompers* v. *Bucks Stove & Range Co.*, 221 U.S. 418, 450 (1911).

The Legislature may, by express statutory grant, confer the power of contempt on others. See *Lawson* v. *Rowley*, 185 Mass. 171, 172-173 (1904) (statute expressly gave to justices of peace power to punish contempt by fine, but absent further express grant to punish in any other way, power limited to punishment by fine). See also *Certain Underwriters at Lloyd's London* v. *Argonaut Ins. Co.*, 264 F. Supp. 2d 926, 943-945 (N.D. Cal. 2003). The Legislature did not expressly grant to arbitrators the power to punish contempt, and absent such a grant, it should not be inferred. See *Lawson* v. *Rowley, supra.*

We need not decide whether the rules of the American Arbitration Association (AAA) could grant such authority where the parties and the Legislature have not done so, and where such authority is inconsistent with the statute. In any event, AAA rules do not expressly grant such authority, and the power to impose monetary fines should not be inferred from broad, nonspecific language.

Finally, there is no way to know whether the $1,000 daily fine imposed here is punitive or compensatory, particularly where the arbitrators have stated that they cannot ascertain the plaintiff's damages. See *School Comm. of New Bedford* v. *Dlouhy*, 360 Mass. 109, 115 (1971) (compensatory nature of civil fine for actual losses sustained by contumacious conduct requires evidentiary support). "Contempts have been classified as either criminal or civil. . . . If the penalty is not imposed wholly for the benefit of the aggrieved party, but in part at least is punishment for the affront to the law, the contempt is deemed criminal. If . . . the power of the court is used only to secure to the aggrieved party the benefit of the decree, either by means of a fine payable to the aggrieved party as a recompense for his loss through disobedience to the decree, or by means of imprisonment terminable upon compliance with the decree, then the contempt is deemed civil." *Godard* v. *Babson-Dow Mfg. Co.*, 319 Mass. 345, 347 (1946). Because "[t]he punishment of [criminal contempt] is solely for the vindication of public authority and the majesty of the law," *Hurley* v. *Commonwealth*,

188 Mass. 443, 445 (1905), fines imposed for criminal contempt are not payable to the private party opponent in the dispute, but to the treasury of the Commonwealth. See *Alves* v. *Braintree,* 341 Mass. 6, 9 (1960); *Opinion of the Justices,* 334 Mass 716, 718 (1956). Criminal contempt proceedings follow the practice in criminal cases, see *School Comm. of New Bedford* v. *Dlouhy, supra* at 117, and defendants in such cases have appellate rights. See Mass. R. Crim. P. 43, 378 Mass. 919 (1979) (summary proceedings for criminal contempt); Mass. R. Crim. P. 44, 378 Mass. 920 (1979).

The injustice in this case is aggravated by the fact that Superadio likely has been ordered to pay a punitive fine for the benefit of a private party, which itself is illegal, and the effect of the court's decision is to render the order unappealable.

I agree with the Appeals Court's analysis and would hold that the arbitrators exceeded their authority by imposing a fine as a discovery sanction. I would vacate that portion of the award that grants a fine of $271,000, pursuant to G. L. c. 251, § 12 (*a*) (3).