Billings, Thomas P., J.
For the reasons that follow, defendant Lee’s Motion for Summary Judgment is ALLOWED; plaintiff North Shore’s cross-motion is DENIED; and final judgment is to enter for Lee, enforcing the December 28, 2009 arbitration award in full. Lee’s oral motion for real estate attachment is also ALLOWED, in the amount of $35,000.
PROCEEDINGS TO DATE
Lee purchased a condominium unit from North Shore, the developer of the condominium. Paragraph 8 of the Rider to the Purchase and Sale Agreement read as follows:
ARBITRATION—The parties agree that if there should be any disputes regarding compliance with specifications in the construction of the premises, the parties shall submit these issues and disputes for decision under the rules of the American Arbitration Association and the parties shall be bound by the decision of said arbitrator (s).
After the closing, claiming that North Shore was responsible for construction defects in his unit, Lee commenced an arbitration proceeding before the AAA.
North Shore thereupon commenced the first of these consolidated court actions (No. 09-2570), asserting that the dispute was non-arbitrable and seeking declaratory and injunctive relief to that effect. The Court (Inge, J.) on October 20, 2009 declined to stay the arbitration, and it went forward, under either the Commercial Arbitration Rules or the Home Construction Arbitration Rules.[1] On December 28, 2009 the arbitrator made an award in Lee’s favor, for “Actual Damages” of $7,272.80, “Future Repairs” of $2,700.00, and “Attorneys Fees (Not an award under Chapter 93A but upon Arbitrator’s Award)” of $31,067.10, for agrand total of $41,039.90. There was no further elaboration of the arbitrator’s rationale for awarding attorneys fees. He also ordered that North Shore bear the fees and costs of the arbitration, including reimbursement to Lee of the $3,097.20 he had laid out toward these fees and costs.
North Shore then commenced the 2010 case with a timely complaint under G.L.c. 251, §12 to vacate the award. Lee counterclaimed for enforcement. I allowed Lee’s unopposed motion to consolidate the two actions. After hearing on March 23, 2010 I denied Lee’s motion to confirm the award, noting that North Shore’s complaint to vacate it had not yet been adjudicated, but allowed Lee’s motion for real estate attachment in the amount of $13,100. This was the amount of the award (in round figures) exclusive of attorneys fees, about which I expressed reservations.[2] I also ordered that the parties file cross motions for summaiy judgment, which they did. Judge Holtz heard the motions, and (very sensibly) ordered the matter remanded to the arbitrator so that he might “specify what statutory or contractual authority permitted the granting of att(omeys) fees.”
The arbitrator responded with a Supplemental Award dated August 30, 2010, in which he said (as before) that he did not find liability, or award fees, under Chapter 93A, but that fees were awarded instead as a sanction for “bad faith tactics” by North Shore and its counsel. These the arbitrator termed “extreme and egregious,” and felt had “unnecessarily lengthen[ed] the proceedings.” Quoting from the supplemental award;
The “bad faith tactics” referred to [in Lee’s motion for costs and fees] are the repeated disruptive actions by Respondent’s counsel, in an apparent attempt to derail the arbitration process. Among the tactics employed by Respondent’s counsel were repeated motions to reconsider the issue of arbitrability of this matter after the issue was decided; notice to the American Arbitration Association (AAA), two days before the first scheduled hearing, that neither he nor his client would be attending the hearings, which were scheduled to take place in his own offices; repeated motions for the arbitrator to recuse himself due to alleged bias when rulings were issued on the merits but contrary to Respondent’s wishes; repeated threats to file lawsuits against the AAA, the AAA case administrator, the arbitrator and Claimant’s counsel on various bases; repeated arguments based upon cited cases that did not support Respondent’s arguments; repeated misstatements of the facts and statements made by opposing counsel and the arbitrator; repeated arguments that consisted of Respondent’s counsel’s relaying anecdotal stories of other matters that he had addressed during his career that had no bearing on the matter at hand and the unnecessarily aggressive cross examination of witnesses that in one instance necessitated a recess in the proceedings to avoid what appeared to be an imminent physical confrontation between Respondent’s counsel and a witness for Claimant.
Despite my repeated attempts to rein in such behavior and move the proceedings along, they continued throughout the proceedings, in what appeared by an attempt by Respondent’s counsel to goad me into exhibiting bias that would justify my recusal, thereby derailing the arbitration process. It must be stated for the record that on one or more occasions, Claimant’s counsel engaged in retaliatory behavior that was unprofessional and served to further degrade the proceedings. I can state without hesitation that Respondent’s counsel’s behavior during these proceedings went *236 far beyond aggressive advocacy of his client, [and] resulted in the most difficult arbitration hearing of the many that I have presided over and served to greatly extend the time of the hearings.
Despite these tactics, I decided the case on the merits of the evidence and testimony before me.
In view of the extreme and egregious behavior exhibited by Respondent’s counsel and the impact that it had in unnecessarily lengthening he proceedings, I determined that it was appropriate to award the Claimant attorneys fees, both to compensate Claimant for the expense of prosecuting this action as the substantially prevailing party and to serve as a deterrent of similar behavior in the future.
Noting that Mass.R.Civ.P. 11 did not appear applicable and that G.L.c. 231, §6F appears to “requir[e] a separate hearing by the Court with regard to the matter of such an award of attorney fees,”[3] the arbitrator expressed his view “that the power to issue such an award is contained in the inherent equitable powers of an arbitrator and is particularly needed to control the egregious behavior as was exhibited in this case.” He mentioned as well that the parties’ contract was silent on the question of attorneys fees, and referenced AAA Commercial Rule R-45,[4] which authorizes “an award of attorneys fees if all parties have requested such an award or it is authorized by law or their arbitration agreement.” (Emphasis supplied.)
DISCUSSION
1. Arbitrability
Determinations of abitrability are subject to four guiding principles.
First, a party cannot be required to arbitrate any dispute that it has not by contract submitted to arbitration. Second, unless otherwise provided by the parties, the preliminary question whether a dispute is subject to arbitration is an issue for judicial determination. Third, when deciding whether a dispute is arbitrable, a court does not consider the merits of underlying claims. Fourth, when considering a broadly worded arbitration clause, there is a presumption that a contract dispute is encompassed by the clause unless it is clear that the dispute is excluded.
Commonwealth v. Philip Morris, Inc., 448 Mass. 836, 843 (2007).
North Shore’s contention that the above-quoted arbitration clause does not apply to its dispute with Lee focuses on the textual connection between paragraphs 8 (“Arbitration”) and 7 (“Home Inspection”) of the Rider. Paragraph 7 gives the buyer the right to have the unit inspected. If the inspector is of the opinion that the unit does not comply with certain referenced standards of construction, “the parties shall reach agreement on the corrections to be made on the premises prior to the closing date.”
If the parties fail to agree on the necessary corrections, then the parties shall submit the matter for immediate resolution through the arbitration process referred in paragraph 8 of this Rider. In the event the Arbitration process determines there are significant deviations from the aforementioned construction standards and the parties cannot reach agreement on resolution, or in the event the Seller is unable to make agreed upon corrections within the time permitted, then the Buyer may terminate this Agreement by giving the Seller written notice on or before the extended closing date, whereupon all deposits shall be refunded to the Buyers and this Agreement shall become null and void without recourse to the parties hereto. (Emphasis supplied.)
Immediately after this language comes the above-quoted Paragraph 8.
Paragraph 7 provides one route into Paragraph 8 and the arbitration process, but nothing before me says it is the only route. To the contrary, by its terms Paragraph 8 apples to “any disputes regarding compliance with specifications in the construction of the premises” (emphasis supplied), without mentioning Paragraph 7.1 therefore agree with Judge Inge’s initial determination that the present dispute was arbitrable, and so rule.[5]
2. Procedural Irregularities in the Arbitration
Next, North Shore contends that the arbitrator displayed “evident partiality” (see G.L.c. 251, §12(2), as evidenced by procedural rulings that substantially prejudiced its rights (id., §12(4))). It gives two particulars.
First, North Shore asserts that Lee failed to prove the cause of the problems in his unit, and that the arbitrator refused to decide North Shore’s motion for directed verdict on this ground. This argument, however, “seeks to impose on the arbitrator a kind of sufficiency of the evidence test that is foreign to the concept of arbitration.” Duxbury v. Rossi, 69 Mass.App.Ct. 59, 64 (2007). A court considering a complaint to vacate an arbitration award is
strictly bound by an arbitrator’s findings and legal conclusions, even if they appear erroneous, inconsistent, or unsupported by the record at the arbitration hearing. “A matter submitted to arbitration is subject to a very narrow scope of review. Absent fraud, errors of law or fact are not sufficient grounds to set aside an award.” “Even a grossly erroneous [arbitration] decision is binding in the absence of fraud." “An arbitrator’s result may be wrong; it may appear unsupported; it may appear poorly reasoned; it may appear foolish. Yet, it may not be subject to court interference.”
Lynn v. Thompson, 435 Mass. 54, 61 (2001), cert. denied, 534 U.S. 1131 (2002) (citations omitted).[6]
Second, North Shore observes that in his pretrial order dated July 10, 2009, the arbitrator indicated *237 that he would prepare written findings of fact and rulings of law, yet the Award contains none. North Shore cites no case, however, suggesting that this is a ground for overturning the award, and it makes no plausible showing of prejudice. In fact, the simple one-page award entered in this case is the norm (especially in small cases), and part of the price one pays for the streamlined and cost-effective dispute resolution that arbitration usually provides. “Arbitrators are no more bound to go into particulars, and assign reasons for their award, than a jury is for its verdict. The duty is best discharged by a simple announcement of the result of their investigations.” Fazio v. Employers’ Liab. Assur. Corp., 347 Mass. 254, 258 (1964).
3. Award of Attorneys Fees
North Shore’s more substantial claim is that in awarding Lee his attorneys fees, the arbitrator exceeded his powers. See G.L.c. 251, §12(3). Until recently, the arbitrator had not articulated the basis for the fee award, other than to say it was not made under Chapter 93A. He now has done so, however, and I am persuaded that he acted within his authority.
It is certainly true that legal fees are not, in the absence of a fee-shifting agreement (see Softkey, Inc. v. Useful Software, Inc., 52 Mass.App.Ct. 837 (2001)) or statute (see Drywall Sys., Inc. v. ZVI Constr. Co., 435 Mass. 664, 671-73 (2002)), awarded in the ordinary course. As the arbitrator’s supplemental award makes clear, however, the course of this arbitration was anything but ordinary, and it was precisely the extraordinary conduct of North Shore and its counsel— and the effect of that conduct on the efficiency, duration, and cost of the proceedings—that lay behind the award, which had both a compensatory and a deterrent purpose.
As such, this case is not very different from Superadio L.P. v. Walt “Baby” Love Productions, Inc., 446 Mass. 330 (2006). There, the SJC affirmed an arbitrator’s award of attorneys fees as a discovery sanction, ruling that the Appeals Court (which had ordered the award set aside) had “failed to follow strictly the strong presumption of arbitrability” and
overlooked the essence of the dispute—Superadio’s conduct of withholding materials that established Baby Love’s damages, namely, the amount of money owed because of Superadio’s alleged violation of the agreement. Such a matter, damages owed for breach of the agreement, related to the core of the agreement. As such, the dispute was one encompassed by the terms of the agreement [to arbitrate).
446 Mass. at 337-38.
The court then gave an extended analysis of the AAA’s Commercial Arbitration Rules. It held that the arbitrators’ authority to “grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties” and to “resolve any disputes concerning the exchange of information” (former Rules 45 and 23(a), respectively; reenacted as Rules 43 and 21(a) in the 2007 edition of the Commercial Rules), “supported by the broad arbitration provision in the agreement and the absence of any limiting language prohibiting a monetary sanction for discovery -violations, authorized the panel to resolve discovery dispute by imposing monetary sanctions.” Id. at 338-39.
Finally, the court invoked basic principles and common sense:
“The principle of arbitral finality [and] the practical demands of deciding on an appropriate remedy for breach . . . dictate that arbitrators, unless expressly restricted by the agreement or the submission to arbitration, have substantial discretion to determine the scope of their contractual authority to fashion remedies, and that judicial review of their awards must be correspondingly narrow and deferential.” To give arbitrators control over discovery and discovery disputes without the authority to impose monetary sanctions for discovery violations and noncompliance with appropriate discovery orders, would impede the arbitrators’ ability to adjudicate claims effectively in the manner contemplated by the arbitration process.
Id. at 339, quoting Advanced Micro Devices, Inc. v. Intel Corp., 9 Cal.4th 362, 367, 376, 36 Cal.Rptr.2d 581, 885 P.2d 994 (1994).
Arbitration is supposed to provide a private, prompt, and economical resolution of disputes.[7] That is, presumably, the goal of parties who include an arbitration clause in their contract. In exchange, they agree to forego the proverbial “slow, but exceedingly fine” grinding of the wheels of justice in the court system; hence, the narrow scope of judicial review of arbitration awards.
In this consumer dispute, Lee’s compensatory damages were ultimately fixed at just under $10,000. It cost him $31,067.10—as of the time of the Award, now nine months old—to attain a resolution. The arbitrator attributed this evident disproportion in transaction costs to “the repeated disruptive actions by Respondent’s counsel, in an apparent attempt to derail the arbitration process,” a finding of fact not reviewable here absent corruption, fraud, or evident partiality, none of which are shown.
To deny the arbitrator an effective remedy for obstructionist tactics going to the heart of the arbitration process “would impede the arbitrator’s] ability to adjudicate claims effectively in the manner contemplated by the arbitration process.” Superadio at 339. At least as much as the discovery abuse in Superadlo, North Shore’s “extreme and egregious behavior . . . unnecessarily lengthening the proceedings” in this case related to the core of the agreement to arbitrate: *238 the parties bargained for a private, prompt and inexpensive dispute resolution process, and North Shore (the arbitrator found) wrongly deprived Lee of the benefit of that bargain. Under the Superadio rule, therefore, the arbitrator’s award of attorneys fees was within his authority to “grant any remedy or relief that [he] deem[ed] just and equitable and within the scope of the agreement of the parties.” Commercial Rule 43(a); Home Construction Rule 43(a).
ORDER
For the foregoing reasons, Lee’s Motion for Summary Judgment is ALLOWED, and North Shore’s is DENIED. Final judgment is to enter for Lee, enforcing the arbitrator’s December 28, 2009 award in full.
Lee’s oral motion for real estate attachment is also ALLOWED. A writ of attachment shall issue against all real property in Middlesex Counly standing in the name of North Shore Construction and Development, Inc., in the amount of $35,000.

Lee has supplied a copy of the Home Construction Rules, which are the more evidently applicable. The arbitrator referenced the Commercial Rules in his Report of Preliminary Hearing and Scheduling Order, and again in his Supplemental Award (see below). I note that the provisions cited in this decision appear, in identical language, in both the Commercial and the Home Construction Rules. Where appropriate, I have given citations to both, using the editions of each (effective June 1, 2007) that were in effect at the time of the arbitration hearing.

See Floors, Inc. v. B.G. Danis of New England, Inc., 380 Mass. 91, 100-01 (1980) (“In the absence of special agreement to the contrary, legal fees artsing out of arbitration have never been awarded in the past, and we shall not depart from this practice in the absence of a legislative determination to do so”); School Comm. of Boston v. United Steelworkers of America, Local 8751, AFL-CIO, CLC, 29 Mass.App.Ct. 53, 59 (1990) (“there is nothing in G.L.c. 251 that suggests the appropriateness of such an award . . . ; the common law of the Commonwealth is to the contrary”).

It does not seem to me that either Rule 11 of section 6F—both of which are applicable to “civil actions,” not to arbitrations—has much to do with the issues before the arbitrator or me.

This was Rule 43 in the 2007 edition.

I note here that the only portion of the Purchase and Sale Agreement supplied in the record before me is the page of the Rider that includes paragraphs 7 and 8. Nothing on this page excludes liability for defects not discovered in the home inspection. Even if it had, this would be an issue going to the merits of the claim, not to arbitrability; the arbitration clause is clear, and broad enough to cover this dispute.

Neither side has submitted a hearing transcript. In fact, there was no requirement that the hearing be stenographi-cally recorded, see AAA Commercial Rule R-26 and Home Construction Rule 27, and there is no suggestion in the record that it was. One wonders how a reviewing court could address the sufficiency of the evidence argument advanced in this case, even if permitted to do so.

See the Introductions to the AAA’s Commercial Rules (“Arbitration has proven to be an effective way to resolve these disputes privately, promptly, and economically”) and its Home Construction Rules (arbitration “is designed to be private, informal, quick, practical and economical”).